JONATHAN BULKLEY ET AL., EXECUTORS, *vs.* GRACE ALICE B. MOSS ET ALS.

Third Judicial District, New Haven, January Term, 1929.

WHEELER, C. J., HAINES, HINMAN, BANKS AND JOHN RUFUS BOOTH, JS.

Argued January 16th—decided April 30th, 1929.

*J. Walter Scheffer,* for the plaintiff.

*Sanford Stoddard,* for the defendants Grace Alice B. Moss *et als.*

*Samuel F. Beardsley,* for the defendants The Farmers Loan and Trust Company *et als.*

WHEELER, C. J.  Our advice is asked upon a single question arising in the construction of the will of Theodora Bulkley: Whether the wharf lot is included in the gift of the homestead under the provisions of Article Third of the Second Codicil to her will. That article is as follows: "Third:—The Homestead in which I now reside located on the west side of Harbor Road, Southport, Connecticut, consisting of about two acres, I give and devise to my sister, Grace Alice Bulkley Moss, if she survive me, to have and to hold during the term of her natural life, and upon the death of the survivor of myself and my said sister I give and devise the said real property to my nephew, Jonathan

Ogden Bulkley, if he be then living; if he be not then living, to his issue then surviving, in equal shares per stirpes and not per capita, or if neither my said nephew nor issue of him be then living, to my nephew, David Tod Bulkley, if he be then living, or if he be not then living, then to his issue then surviving, in equal shares, per stirpes and not per capita."

The wharf lot was on the east side of the Harbor Road; the homestead is described in this article as on the west side of that road. If the language of Article Third be taken literally it would require the answer that the wharf lot is not included in the gift of the homestead.

The contention of the present and potential legatees under this article is that the circumstances surrounding the testatrix at the making of this codicil clearly indicate that she intended to include in the terms of this gift the wharf lot and that this intention when ascertained controls the construction to be accorded this article of the will. All of the parties beneficially interested in the trust are perfectly willing that the wharf lot should be considered as a part of "The Homestead" and pass to the devisees under Article Third of the Second Codicil, but one of the trustees— the Trust Company—feels that it cannot with safety surrender any valuable interest which might belong to the trust without an adjudication construing the language of this codicil.

To ascertain this intention we must note and consider these circumstances in some detail. Upon the west side of the Harbor Road upon a tract of about one and a half acres of land stood the Bulkley homestead residence containing approximately twenty rooms. On the east side of the Harbor Road, which is about thirty feet in width, is about a half acre of land known as the wharf lot, its northerly and

southerly lines being approximately a continuance easterly of the northerly and southerly lines of the residence tract on the west side of the road. These properties were owned by the testatrix at her decease and were occupied by her as a home for the major part of every year, especially in the summer time, and during her life of upward of sixty years she had lived in this residence. Prior to the testatrix's ownership her father and grandfather had owned these properties for a century or more. The neighborhood of these premises has been becoming, more and more, an exclusive residential community. The Harbor Road is a winding road following the westerly shore of the harbor and from fifty to one hundred and fifty feet from it. Large and substantial residences lie upon the west side of this road and for two hundred feet south and for a long distance north of the Bulkley homestead there are no dwellings located between the east line of the road and the harbor. The harbor of Southport in the latter part of the eighteenth and the early part of the nineteenth century was used to a considerable extent for commercial purposes, but at the present time and for the past twenty years it has been used exclusively as a yacht anchorage. For seventy years or more no building has existed on the wharf lot and the testatrix and her predecessors in title have kept this lot open and cared for the grass and lawns thereon in the same manner as the grass and lawns on the property on the Bulkley homestead lying west of the road has been cared for. For many years during the summer time the residence has been so shut in by foliage and by other adjoining dwellings that its only open view is toward the east, across the wharf lot. If any building of substantial size should be erected upon the wharf lot it would be a great detriment to this residence and the land on which it stands and seriously affect its

value. There is every indication in these facts that the wharf lot had been regarded as a part of "The Homestead" by its owners for over a century. Its north and south boundary lines are approximately an extension of the north and south lines of the residence lot on the west side of the road. The keeping of it open and free from buildings conformed to the custom of this exclusive neighborhood. All of the owners of residences upon the west side of the road in this locality kept the land upon the east side of the road and to the harbor open, manifestly to preserve the view of the harbor and to retain access to it. The only view from the residence was across the wharf lot. Its ownership apart from that of the residence lot, with the liability of having buildings erected thereon, would necessarily seriously diminish the value of this residence. All of these considerations the testatrix, as owner, and her predecessor ancestors, must be presumed to have known. It was ancestral property; her attachment to it is a necessary inference from the facts before us. The disposition by will of the residence lot on the west side of the road and the wharf lot on the opposite side to different legatees, with the consequent liability to injury to the value and desirability of the residence lot and the departure from century old family traditions is something which would be so foreign, not only to the personal feelings of the testatrix but also so detrimental to the interest of either her estate or of the legatee of the residence lot, as to be diametrically opposed to what would be her natural and normal intention. Unless the terms of this article so clearly exclude the wharf lot from the devise to the sister of the testatrix as to overcome her apparent natural and normal intention, we ought not to reach that conclusion. The exclusion of the wharf lot from the devise of "The Homestead" would sever

it from the residence lot and take its ownership from those to whom the testatrix in Article Third gave "The Homestead," first to her sister for life, then to a nephew, Jonathan Ogden Bulkley if living, otherwise to his issue and if neither be living to another nephew and if he be not living to his issue. Here is expressed the manifest purpose of the testatrix to keep the ownership of "The Homestead" where it had been for over a century, in her own family. It is apparent that her purpose was to hand down "The Homestead," as it had always been treated and used, to the specified legatees of her own blood. The testatrix undoubtedly had in mind the probability that if the wharf lot should become a part of the residue it would in all likelihood be disposed of to some one outside her family. There is nothing in the will except the designation of the location of "The Homestead" as "on the west side of Harbor Road" which tends to indicate the exclusion of the wharf lot on the east side of the road. But the description of "The Homestead" as on the west side of the road may well have specially referred to the main location of "The Homestead," facing as the residence did the east. The homestead as it had always existed included the wharf lot and where there are two inconsistent provisions in an article of a will that construction will be adopted which carries out the intention of the testatrix, if that can be ascertained.

Another fact of extreme importance is found in this article. The area of "The Homestead" is designated as two acres. In fact the residence lot on the west side of the road is about one and a half acres. But if to this is added the half acre of the wharf lot, the two plots make up the described area of "The Homestead" as found in this article of the codicil. We cannot assume that the testatrix did not know the acreage of the

lot on the west side of the road, nor that she did not know the total acreage of the two plots which were in her ownership and control.

The codicil was executed in New York, presumably it was drafted there. It does not appear that the scrivener knew the locus. Under those circumstances it is easy to understand that the apparent conflict between the location of "The Homestead" and its area in all probability arose because of the unfamiliarity of the scrivener with the locus and the failure of the testatrix to sufficiently explain it, and her primary desire to preserve "the traditions of the family" and to keep the property, residence and wharf lots, as a single unit "in the family name."

The Second Codicil to the will of the testatrix was executed in New York City, June 26th, 1922.

On February 9th, 1920, the testatrix drafted in her own handwriting and executed a codicil in these words: "I Theodora Bulkley being of sound mind do declare this day February 9th, 1920—this to be a codicil to my last will and testament—I do hereby revoke the clause giving to my nephew Jonathan Ogden Bulkley, The Homestead on Harbor Road Southport Conn. with its contents—and dock immediately opposite thereto and do give it to my sister, Grace Bulkley Moss, feeling that she will have a greater interest in preserving the traditions of the family and keeping it in the family name—I do also give to her the Tapestry now hanging in the Tapestry room at 48 Remson St. Bklyn.—and to my niece Alice Moss Truesdale the old minatures I bought in Europe—and I do revoke the clause giving to my nephew Jonathan Ogden Bulkley my solitaire diamond ring and do give it to his sister Ray Tod Bulkley, as the one I had willed to her has been lost." The codicil was never probated, being revoked by the Second Codicil. This constitutes

a declaration of the testatrix's then purpose and is admissible under our statute in proof of her intention. She in this codicil revokes a previous devise to her nephew Jonathan Ogden Bulkley which gave to him "The Homestead" on Harbor Road, and the dock immediately opposite, and gives these with the contents to her sister Grace Bulkley Moss.

It is significant of the continued purpose of the testatrix that in the Second Codicil this same sister is the devisee for life of "The Homestead" while this nephew upon her decease is the devisee of the fee. The reason given by the testatrix for the substitution of her sister for her nephew is the feeling of the testatrix that "she will have a greater interest in preserving the traditions of the family and keeping it in the family name" than her nephew will. Her interest in keeping this property in the family name is evidently a vital one and it would be strange if she should, less than two and one half years later, deliberately abandon this purpose. Her devise in the 1920 codicil of her own drafting specifically included both the residence lot and the wharf lot. To the testatrix they were then an inseparable unit, as they had been during the ownership and use of herself, her father and her grandfather. No suggestion of a reason for a change of purpose on the part of the testatrix is present in the record, indeed her pride of family is shown in the disposition she makes in the Second Codicil of the family heirlooms to the members of her family. If the wharf lot is not included in the devise to Mrs. Moss it becomes a part of the residue and is given to trustees to be divided into as many equal parts as there are nephews and nieces, each nephew and niece to receive the income for life, the principal upon the decease of each to go to his or her issue and if there be none to his or her heirs or next of kin.

In the light of the circumstances surrounding the testatrix she could not have intended the wharf lot to be divided into five parts, each part to be held for the life use of her two nieces and three nephews with remainder over to their issue and if there be none to their heirs or next of kin.  The impracticability of such a division of the wharf lot, the detriment to the residence lot and the abandonment of the treasured purpose of preserving the family name by preserving the family homestead, require this answer to the question upon which our advice is asked:  The wharf lot is included in the devise of "The Homestead" under the provisions of Article Third of the Second Codicil to the will of Theodora Bulkley.

In this opinion the other judges concurred.