ESTATE OF BLACKBOURN: BLACKBOURN and others, Appellants, vs. BRINKMAN and others, Respondents.

*October 10—November 6, 1951.*

26

For the appellants there were briefs by *Morse & Morse* of Lancaster, and oral argument by *E. J. Morse, Jr.,* and *E. J. Morse, Sr.*

For the respondents there was a brief by *Harry E. Carthew* of Lancaster, for Lloyd Blackbourn and others, and by *Bonn & Craney* of Bloomington, for Noah Brinkman and T. M. Webster, executors, and oral argument by *Mr. Carthew* and *Mr. Melvin F. Bonn.*

FAIRCHILD, J. The will now before us appears to have been carefully thought out and deliberately arranged so as to take into consideration certain blood relations and relatives by marriage. The selected legatees vary in the closeness of their relation to the testator. He was a widower without children and was determined to have as the objects of his bounty persons who would naturally fall into different classes. He considered as the person of the first class his living sister. The next level appears to be the nephews and nieces of his own blood. Another class is the nephews of his deceased wife. The intention of a testator becomes manifest by the scheme of the whole will and the ultimate purpose or object sought to be served in the making of it, and the interpretation of words and phrases which result in indefiniteness should, in a construction of the will, be consistent with the testator's object and purpose. In this will it is apparent that Dr. Blackbourn first considered his living sister, and places her in a class. He provides for her inheriting one sixth of the residue and remainder of his estate. He directs in the fifth paragraph that "In the event that my sister Mrs. Cora Blackbourn Birch is living at the time of my decease, all the residue and remainder of my estate, of whatsoever kind, I direct shall be divided into six equal parts and disposed of as follows: To my sister, Mrs. Cora Blackbourn Birch, or her heirs, one of said parts." He leaves her heirs to take by representation and then defines a class consisting of nieces and nephews whose parents are dead. In creating this classification, he provides that the nieces and nephews, the children described as being children of deceased brothers and sisters, are to take the other five parts, "to be divided equally among them share and share alike." There was no attempt to have any particular one sixth go to any particular individual or group, but all five sixths go to the entire group. He then adds a provision that the issue of any deceased niece or

nephew is to take their parents' share. He inserts in the fifth paragraph after the words "five of said parts, to be divided equally among them [nieces and nephews, except the Birch heirs] share and share alike" the further words, which are evidently misplaced: "All of such nieces and nephews shall take *per stirpes* and not *per capita.*" This is immediately followed by the words "and it is my desire that the issue of any deceased niece or nephew shall take their parents' share." Under the distribution provided for, in the event that one or more of such nieces or nephews predeceased the testator, then the children of such niece or nephew who was a parent would have no share except such as came to him or her by right of representation. This provision as to the grandnieces and grandnephews is, of course a *per stirpes* or taking by representation provision, and as to them there is a different classification.

However, the testator's purpose to have his nieces and nephews of his deceased brothers and sisters take as a class on a share-and-share-alike basis becomes evident in further reading the will, for in the sixth paragraph he provides: "In the event that my sister, Mrs. Cora Blackbourn Birch, shall not be living at the time of my decease, then I give, bequeath, and devise, all the residue and remainder of my estate, of whatsoever kind, to my nieces and nephews, the children of my deceased sisters and brothers." By that paragraph he puts the Birch nieces and nephews, in the event of their mother's death, in the general class of nieces and nephews who are to inherit the residue of his estate. Had he intended a *per stirpes* distribution, there certainly would have been no occasion for this radical change in his plan of distribution. While using the phrases *"per stirpes"* and *"per capita,"* he still writes in the will, "as it is my desire that they shall share equally in my estate," and again provides that the children of any deceased niece or nephew shall take their parents' share.

The confusion imported by the careless use of words with an exact legal meaning which the scrivener may or may not have thoroughly comprehended is cleared up by the organization of the will, the classes recognized, and the repeated declaration that when the nieces and nephews take in the place and stead of a deceased sister or brother, they are to take share and share alike, "as it is my desire that they shall share equally in my estate." And particularly does his intention to have this class take the full residue and remainder of his estate in case of the death of all of his brothers and sisters become convincingly clear when he provides for an inclusion of the Birch heirs in the same class as the other nieces and nephews if their mother has predeceased the testator. There is thus established a planned classification in his scheme for distribution of his estate to his legatees. As we have already said, when words or phrases are used which are inconsistent with a plan but which are followed by a direct statement in definite language showing the interpretation or understanding by the testator of the clause in which they appear, then the interpretation of that clause must be consistent with the evident plan or scheme of the will, for the language of the will is to be read in the light of that plan. The circumstances then disclose what was very evidently in the testator's mind at the time of making his last will and testament. *Will of Stephens,* 206 Wis. 16, 238 N. W. 900; *Estate of Donges,* 103 Wis. 497, 79 N. W. 786; *Will of Ohse,* 137 Wis. 474, 119 N. W. 93; *Maxcy v. Oshkosh,* 144 Wis. 238, 128 N. W. 899, 128 N. W. 1138; *Flint v. Wisconsin Trust Co.* 151 Wis. 231, 138 N. W. 629; *Will of Ehlers,* 155 Wis. 46, 143 N. W. 1050; *Will of Smith,* 165 Wis. 207, 161 N. W. 749; *Will of Elmore,* 165 Wis. 266, 162 N. W. 438; *Will of Read,* 180 Wis. 497, 193 N. W. 382.

When the will itself, including all of its parts, is so set up as to disclose a design by the testator to arrange his legatees in classes and to distribute his estate or a portion

of it on a share-and-share-alike basis between the members of a class, the comprehensive plan shown by the provisions requires the court to carry out the purpose and intention of the testator according to his evident wishes. We agree with the learned trial judge that the confusing statement in the fifth paragraph is: "All of such nieces and nephews shall take *per stirpes* and not *per capita*," but it is immediately followed by the words "and it is my desire that the issue of any deceased niece or nephew shall take their parents' share." But the words *"per stirpes"* and *"per capita"* were not advisedly used in a manner consistent with the plan and purpose of the will. There evidently was, on the part of the scrivener, a lack of knowledge of the meaning of the words, and their use was so clearly contradictory to the intention of the testator as to render those words, as said by the learned trial judge, nugatory and of no value, as they did not express the actual intent of the testator. The general plan for devising and bequeathing a portion of his estate on what may be called a fair and equitable basis to his nieces and nephews further appears by the provisions incorporated in the second codicil of his will which is before us. There he reduced the legacy to Geneva Blackbourn, daughter of his deceased brother, Everett Blackbourn, from the sum of $1,000 to $500 and gave the sum of $500 to Erskine Blackbourn, one of the children of his brother Elmer Blackbourn, so that Geneva Blackbourn and Erskine Blackbourn, who were physically handicapped, would receive the same amount. He intended that his nieces and nephews should share as a class and not by right of representation, and that the children of any niece or nephew were to take their parents' share in case of the death of the parents. This requires the affirmance of the judgment granting to Cora Blackbourn Birch, who survived the testator, a one sixth of the residue of his estate; to each of his said nephews and nieces living at the time of his death a 5/138 part of the residue of his estate; to Ruth Chapman, Grace

Belscamper, Charlotte Smith, Forest Slaght, Murten Slaght, Davis Slaght, and Robert Slaght, grandnephews and grand-nieces, children of Floyd Slaght, a deceased son of Ella Slaght, together by right of representation under said Floyd Slaght, a 5/138 part of said residue, to each a 5/966 part thereof; and to Irvin Slaght, a grandnephew, only child of Oscar Slaght, a deceased son of said Ella Slaght, a 5/138 part of said residue.

The admission in evidence of a previous will is assigned as error by appellants. The similarity of the will and the general scheme disclosed by it, warranted the trial court in assuming that the will under consideration was modeled after that will; and under the authorities a prior will may be considered in ascertaining the intention of the testator, at least where the will under consideration was modeled on the prior will. 69 C. J., Wills, p. 120, sec. 1163; *Ennis v. Smith,* 55 U. S. (18 How.) 400, 14 L. Ed. 472; *Dwight v. Fancher,* 217 App. Div. 377, 216 N. Y. Supp. 652 (affirmed 245 N. Y. 71, 156 N. E. 186, 157 N. E. 859); *In re Miner's Will,* 146 N. Y. 121, 40 N. E. 788; *Bulkley v. Moss,* 109 Conn. 170, 145 Atl. 882. *Converse v. Wales,* 86 Mass. 512; *Scott v. West,* 63 Wis. 529, 536, 551, 24 N. W. 161, 25 N. W. 18.

*By the Court.*—Judgment affirmed.