In the MATTER OF the ESTATE OF
Julia JOHNSON, Deceased.

Orlando JOHNSON, individually, and as the son, heir and devisee in the Estate of Julia Johnson, Appellant and Cross–Appellee,

v.

ESTATE OF Julia JOHNSON, Deceased, Kenneth Johnson and Lillian Erickson, Defendants,

and

Hazel Ackerman, Appellee
and Cross–Appellant.

Civ. No. 920327.

Supreme Court of North Dakota.

June 16, 1993.

Caldis, Arneson & Tingum, Ltd., Grand Forks, for appellant and cross-appellee; argued by Gordon Caldis.

McElroy, Camrud, Maddock & Olson, Grand Forks, for appellee and cross-appellant; argued by Scott D. Jensen.

MESCHKE, Justice.

Orlando Johnson appealed from a county court order construing the will of Orlando's mother, Julia Johnson, and ordering distribution of her estate. We conclude that the court misconstrued Julia's will, and we reverse and remand for distribution of the estate in accord with this opinion.

Julia married Herman Johnson. They owned a home in Grand Forks and two quarters of farmland south of Grand Forks, which we will refer to as the NW¼ and the SW¼. Julia and Herman had five children: Lillian, Orlando, Hazel, Kenneth, and Walter.

When Herman died in 1929, Julia became owner of the NW¼ and a 5/15 interest in the SW¼. Each of the five children received a 2/15 interest in the SW¼. Walter died without issue in 1958, and Julia received his 2/15 interest in the SW¼, giving her a 7/15 interest in that property.

In 1961 Julia executed a will devising all of her property jointly to the four living children. The will gave Orlando, who resides on and farms the Johnsons' land, an option to purchase Julia's farmland from the other children when she died.

In 1970 Julia executed a new will devising specific properties to the children. She devised the home in Grand Forks to Hazel, the NW¼ plus all savings and cash to Kenneth and Lillian, and her interest in the SW¼ to Orlando. In 1976 Julia gave her interest in the SW¼ to Orlando.

In 1986 Julia executed a new will. Language in both the 1970 and 1986 wills is nearly identical. The only substantive change that Julia made in 1986 was to delete the paragraph devising the SW¼ to Orlando, because she had already gifted that property to him in 1976.

Julia died in 1991. The 1986 will was admitted to probate, and Orlando was named personal representative of Julia's estate. A dispute arose among the children, and Orlando requested the court to construe the will. The court determined that Julia's will was ambiguous and held an evidentiary hearing to help determine Julia's testamentary intent. The court concluded that Julia's 1986 will was modeled after the 1970 will, and found that Julia intended that her gift to Orlando of the SW¼ was all that Orlando was to receive from her. The court concluded that Julia did not intend Orlando to receive anything else under the 1986 will, and ordered distribution in accord with its interpretation. Orlando appealed.

■ One of the appellees, Hazel (Johnson) Ackerman, asserts on appeal that at the hearing for admitting the 1986 will and appointing Orlando as personal representative of Julia's estate, Orlando, through his attorney, agreed that he would not be a beneficiary under the will, except for receiving personal property under the residuary clause.[1] Relying on *Matter of Estate of Hedstrom*, 472 N.W.2d 454 (N.D.1991), Hazel contends that Orlando should be bound by this open-court agreement and should not be allowed to bring this appeal challenging the county court's distribution of property.

In *Hedstrom*, 472 N.W.2d 454, a surviving child, Alton, objected to the personal representative's distribution of his mother's estate. At a hearing, with Alton present, the personal representative told the court that Alton had agreed that his share of the estate would be offset by $18,000 for debts that he owed to his mother. Alton indicated to the court during the hearing that he agreed to accept the $18,000 setoff, and when the court asked if there was anything further, Alton remained silent. We held that this open-court compromise between the parties was binding upon Alton. In reaching that conclusion, we stated that Alton neither voiced his objection to the court during the hearing, nor did he soon after complain about the negotiated setoff that was approved by the court. This case is different than *Hedstrom*.

Orlando did not personally attend the hearing. There was a discussion during the hearing between attorney Ted Camrud, representing Hazel, and attorney Robert Alphson, representing Orlando, that Orlando would only take under the residuary clause. But, the county court never found that the parties arrived at a compromise that would bind Orlando. Under these circumstances, we are unpersuaded that the parties reached any agreement about Orlando not receiving property under Julia's will. We conclude, therefore, that Orlando is not barred from challenging interpretation of the will and bringing this appeal.

The disputed language is located in Paragraph 4 of the 1986 will, after the specific gifts to the three children, other than Orlando:

... It is my intention that my four children share equally in my estate and I therefore direct that should the property devised and bequeathed to any of my children be appraised at an amount which would result in unequal shares, then those receiving property over an equal share shall pay to the other children sufficient to result in equal shares to each other.

Orlando asserts that, because he did not receive any specific devise of property under the will, Paragraph 4 requires that the specific devises of property to the other three children be valued, and that Orlando receive money equal to one-fourth of the property devised to the other three children.

Orlando contends that a payment to him by the other three children is the only way all four children will "share equally" in Julia's estate. Orlando asserts that Julia's inter vivos gift to him of her 7/15 interest in the SW¼ cannot be considered in determining Orlando's share under the will, because the SW¼ was not part of Julia's estate at the time of her death. Orlando also asserts that Julia's inter vivos gift of the SW¼ to him cannot be treated as an ademption in satisfaction of what he should receive under the will, because the writing requirements under the ademption statute, NDCC 30.1–09–12, have not been met.

Hazel asserts that Orlando should receive nothing under Paragraph 4 of the 1986 will, because only property specifically devised under the will is to be appraised and equalized among the beneficiaries. Hazel contends that because Orlando received no specific devise under the will, the equalization clause in Paragraph 4 is not applicable to him.

---

**1.** Under Paragraph 5 of the 1986 will, all of Julia's living children received an equal share of the estate residue, which the parties agree consists solely of personal property items. This residual property has been distributed among the beneficiaries, and there is no dispute about its distribution.

The purpose in construing a will is to ascertain the testator's intent as it appears from a full and complete consideration of the will when read in light of the surrounding circumstances. *Schatz v. Schatz,* 419 N.W.2d 903 (N.D.1988). Whether a will is ambiguous is a question of law for the court to decide. *Matter of Estate of Klein,* 434 N.W.2d 560 (N.D. 1989). A will provision is ambiguous if it has more than one reasonable interpretation. *Matter of Estate of Klein,* .434 N.W.2d at 561. If a will is ambiguous, extrinsic evidence can be used to clear up the ambiguity. *Quandee v. Skene,* 321 N.W.2d 91 (N.D.1982). As *Matter of Estate of Klein,* 434 N.W.2d at 561, held, a trial court's finding about the testator's intent will not be set aside unless it is clearly erroneous.

We agree with the trial court that Paragraph 4 of Julia's 1986 will is ambiguous. The provision specifically states that Julia's "four" children shall share equally in her estate. Yet, in the preceding paragraphs, the will only devises specific property to three of the children, not Orlando. Paragraph 4 directs that the devised property should be appraised, and that those receiving the greater valued property should pay to the others an amount sufficient to achieve equality. The ambiguity in Paragraph 4 comes from the language indicating that there may be an inequality requiring equalization payments. Because Orlando did not receive any specific devise under the will, there would have to be an equalization payment to Orlando, if the equalization language is intended to apply to him as well as the other children. But Paragraph 4, on its face, does not recognize that certainty.

Orlando argues that we should construe the will to require the three children who received specific devises under the will to pay Orlando money equivalent to a one-fourth share of Julia's probate estate at her death. Hazel argues that Julia did not intend that Orlando would get anything more than the inter vivos gift of the SW¼. She asserts that we should construe the will to require equalization of value only among the three children receiving specific devises under the will, thereby leaving Orlando out of the equalization formula, as the trial court did. We are convinced that neither party's advocated position would accomplish Julia's intent.

Attorney Robert Alphson assisted Julia in drafting the 1970 and 1986 wills. Alphson testified that in 1986 Julia asked him to write a new will, deleting that paragraph in the 1970 will that devised the SW¼ to Orlando. Alphson asked her "why she was leaving [Orlando] out of that piece of land," and, Julia responded that "Orlando has been taken care of." Alphson testified further about his 1986 conversation with Julia:

Q ... In the fourth paragraph of this will she states, "It is my intention that my four children share equally in my estate." Is that something that Julia Johnson wanted in her will?

A She did.

Q ... And was that something that you discussed with her at that point in time?

A When we initially met she didn't want any changes, and she, throughout my contact with her, she wanted her children to share equally in her estate.

Kenneth Johnson's testimony at the hearing is consistent with Alphson's testimony that Julia wanted to treat all four children equally. Kenneth testified that although he seldom talked with Julia about disposition of her property after her death, she did tell him that "she was going to be equal and fair to all her children."

Julia made clear her intentions about treating all four children equally. The problem here is that the ambiguous language of the 1986 will creates confusion about how Julia intended to accomplish that objective. It is appropriate to consider a prior will to ascertain the intention of a testator, particularly where the will under consideration is modeled upon the prior will. *In re Estate of Blackbourn,* 260 Wis. 25, 49 N.W.2d 755 (1951); *See also Carlisle v. Delaware Trust Co.,* 99 A.2d 764 (Del. 1953). We believe that the extrinsic evidence about Julia's 1970 will provides the key to understanding how Julia intended to

treat all her children equally under the 1986 will.

The 1970 will contained an equalization clause identical to Paragraph 4 of the 1986 will. Within the context of the 1970 will, the equalization clause contains no ambiguity because all four children received specific devises there. The equalization clause required the devised properties to be appraised and, if the value received by one child was less than that received by the others, an equalizing sum of money would be paid to that child by the others. The equalization clause clearly applied to all of the children.

The specific devise of property to Orlando under the 1970 will was Julia's 7/15 interest in the SW¼. When she transferred that property to Orlando in 1976, the specific devise of that property under the 1970 will became superfluous. So, Julia asked her attorney in 1986 to draft a new will removing that provision. He did so, but he did nothing to change the language of the equalization clause, making it unclear.

The equalization clause calls for treating all four children equally, but upon deleting Orlando's devise, only three of the children received property from the estate under the 1986 will. There is no evidence that Julia changed her mind between 1970 and 1986 about treating all four children equally or about equalizing the value among them of the property they received from her. For that reason, we conclude that the trial court's finding that Orlando should not participate under the equalization clause is clearly erroneous.

Although Julia's intentions did not change, the language of the equaliza-tion clause that aptly accomplished her intent within the context of the 1970 will, could not, without appropriate redrafting, accomplish her intent within the context of the 1986 will. Julia's attorney did not make clarifying changes to the equalization clause in the 1986 will, nor did he apparently discuss that paragraph and its effect with Julia in 1986, or later. However, his omissions do not prevent us from construing the 1986 will to accomplish Julia's unyielding desire to treat all of her children equally. As we said in *Matter of Estate of Klein*, 434 N.W.2d at 562, if reasonably possible, the language used in a will, however crudely or inartfully drawn, should be construed to accomplish, and not defeat, the testator's intent.

Although the interest in the SW¼ that Orlando received from Julia in 1976 was not part of her estate when she died, it is clear upon reviewing both the 1970 and 1986 wills that Julia intended that property to be considered as part of Orlando's share of the estate for purposes of giving each child an equal share. It is also clear that Julia wanted to equalize the value of the property among all four children. To accomplish Julia's intent, we construe Paragraph 4 of the 1986 will as follows.

The equalization clause applies to all four children. The property specifically devised to Hazel, Kenneth, and Lillian under the 1986 will and Julia's interest in the SW¼ that she transferred to Orlando in 1976 must be appraised.[2] If the value of the property received by any child is unequal, those receiving the greater share must pay an amount to result in each receiving equal value.[3] In this way, Orlando shares in the

2. The statutory duty to inventory the decedent's property, NDCC 30.1–18–06, requires the personal representative to determine the fair market value of the property "as of the date of the decedent's death." We believe that is the appropriate valuation date for purposes of equalizing value among the four children under Paragraph 4. However, improvements, if any, made by Orlando while in possession of the SW¼, should be omitted in determining its value for equalization purposes.

3. During oral argument neither attorney could answer whether Orlando has received more or less than a one-fourth share. However, Hazel's attorney estimated the property values, and those numbers suggest that Orlando may have received substantially less than a one-fourth share.

County courts derive their jurisdiction solely from the state constitution and statutory law. *Matter of Estate of Binder*, 366 N.W.2d 454 (N.D. 1985). Under NDCC 30.1–02–02 the county court has jurisdiction over all subject matter relating to probate. However, neither party has suggested that the court would have authority to divest Orlando of his interest in the SW¼ that

equalization process, but the value of the 7/15 interest in the SW¼ that he received from Julia is a part of his fair share.

We reverse and remand for further proceedings in accordance with this opinion.

VANDE WALLE, C.J., and MESCHKE, LEVINE, NEUMANN and SANDSTROM, JJ., concur.

Julia gifted to him in 1976, and we are unaware of any law that would give the court jurisdiction over that completed gift. Consequently, if the property valuations turn out that Orlando has already received more than a one-fourth share, equalization would have to be accomplished among the other three children, but not Orlando. That result would be equivalent to the county court's decision.