WILL OF EHLERS: APPEAL OF HASE.

*October 28—November 18, 1913.*

*Wills: Construction: Intention of testator: Uncertainty.*

1. The paramount rule in construing a will is that the intention of the testator should prevail so far as it can be read out of the language used to express it.
2. Of two reasonable meanings, one which will render a will void in whole or in part for uncertainty and one which will not, the latter is to prevail.
3. Ordinarily, the last clause of two which conflict is supreme; but this has no application where the effect would be to defeat the real intent.
4. A will giving to testatrix's four stepchildren (named in the will and called "my children") "each an undivided one-fifth part of my estate," and to her five grandchildren, "each an undivided one-tenth part of my estate," the fractions named totaling thirteen tenths, is construed as giving one fifth of the estate to each of the stepchildren and one twenty-fifth to each of the grandchildren.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

Action for construction of a will. The proceeding was commenced in county court. It involved the meaning of this provision of the instrument:

"I give, devise and bequeath to my children, *Mary Neumeyer* (née *Ehlers*), *Minnie Radenz* (née *Ehlers*), *Ida Hass* (née *Ehlers*) and *Alwine Ehlers* to each an undivided one-fifth part of my estate and to the children of my son, *Carl Hass,* whose names are *Margaretha Hass, Adela Hass, Marie*

*Hass, Paul Hass* and *Carl Hass,* each an undivided one-tenth part of my estate."

The petition for construction was made by *Carl Hase,* only child of the testator's blood. The persons remembered as her children were her stepchildren. There was no residuary clause as such and no devise or bequest except those mentioned in the quoted provision.

The county court decided that the will was void for uncertainty. On appeal to the circuit court that was reversed and the will sustained as bequeathing one fifth of the estate to each of the four stepchildren and one twenty-fifth to each of the grandchildren.

*Rossiter Lines,* for the appellant, contended that the will fails to disclose the intention of the testatrix and that any effort to give effect to its provisions must rest upon conjecture alone. The intention which is sought for in the construction of a will is not that which existed in the mind of the testator but that which is expressed by the language of the will. *Willcy v. Clark,* 105 Wis. 22, 24, 25, 80 N. W. 102; *Pabst v. Goodrich,* 133 Wis. 43, 66, 113 N. W. 398; *In re Donges's Estate,* 103 Wis. 497, 500, 501, 79 N. W. 786; *Will of Ohse,* 137 Wis. 474, 119 N. W. 93; *Burke v. Lee,* 76 Va. 386; *Gee v. Gee,* 204 Ill. 588, 68 N. E. 515; *Daugherty v. Rogers,* 119 Ind. 254, 20 N. E. 779; *Waters v. Bishop,* 122 Ind. 516, 24 N. E. 161; *Stokes v. Van Wyck,* 83 Va. 724, 3 S. E. 387; *Byrn v. Godfrey,* 4 Ves. Jr. 5; *In re Creighton's Estate,* 91 Neb. 654, 136 N. W. 1001; *Rodisch v. Moore,* 257 Ill. 615, 101 N. E. 206; *Graves v. Rose,* 246 Ill. 76, 92 N. E. 601.

*Frank B. Van Valkenburgh,* guardian *ad litem,* for the respondents *Paul Hase* and *Carl Hase.*

For the respondent executrix the cause was submitted on the brief of *Froede & Bodenstab.*

MARSHALL, J. Much difficulty is liable to occur in initial trials, involving the construction of wills by taking some par-

ticular adjudications respecting some other wills as controlling, instead of looking to legal principles for guidance, or from following some well known rule for judicial construction as if it were applicable, universally, instead of appreciating that, in general, such rules are to be used in choosing between reasonable meanings of substantial equal dignity and keeping prominently in mind that paramount to all others, is the rule that the intention of the testator should prevail so far as it can be read out of the language used to express it. Then one is liable to go widely astray if it be not appreciated that while, primarily, it is to be presumed that a testator used language in its common ordinary and literal sense, that yields easily to the fact, in case of the fact existing from any legitimate cause, that read in such sense the meaning would be left in obscurity or found to be contrary to the testator's intention.

The court has very great power which may be exercised to prevent failure of a testator's purpose, all in harmony with the rule that the legal intention of the testator is the one expressed by his language, though it may not be exactly the real intention he had in mind,—that his purpose can be given vitality only so far as it can be read reasonably out of the will,—but to the end that the testamentary idea may be so read the language should be examined in the light of the situation of the testator at the time he used it and all environing circumstances. If thereby the intention is plain, or the major probabilities are on the side of a particular intent, for the purpose of so reading the will as to express it, words may be given a very broad or very restrictive meaning, going to the very limit of the boundaries of reason, or may be transposed or rejected, or words not seen, may be read in place which are there by reasonable or necessary inference, or may be transposed or supplied, and thus the language be moulded to express, so far as can reasonably be done, the testator's intention. True, the heir at law is to be favored, but that is a

rule to aid in making a choice between reasonable meanings.
True, too, ordinarily, the last clause of two which conflict, is
supreme, but it has no application where the effect would be
to defeat the real intent. · These principles are so familiar
and have been so often applied in this court that a mere state-
ment of them is sufficient for the purpose of this case.

In the light of the foregoing the way to a solution of the
question presented for decision is fairly plain.    The will, as
a whole, shows without room for reasonable controversy, these
circumstances: The testatrix intended that none of her prop-
erty should go to her only heir at law.    She purposed provid-
ing for a distribution of all her estate.    She had in mind two
classes of beneficiaries, the first, consisting of four members
and denominated her "children," though they were only her
stepchildren, and the second, consisting of five members,—
her grandchildren.    She gave the stepchildren the place of
first importance showing that she regarded them the nearest to
her as worthy of being bountifully remembered.

Now one of the most weighty rules for judicial construction
is that of two reasonable meanings, one which will render a
will void, in whole or in part, for uncertainty and one which
will not, the latter is to prevail.    In view of that and the
manifest purpose of the testatrix to dispose of all of her prop-
erty, the circumstance that she regarded the members of the
first class of beneficiaries as if they were her children in the
first degree of her own blood,—the major probabilities seem
to be that she purposed providing for them as a preferred
class and dividing the residue of her estate between her
grandchildren, as the circuit court held.    To say that there
is as much reason for holding that the testator erred in nam-
ing the fraction of her estate she intended for her so-called
children as in naming the fraction for the grandchildren,
would ignore the fact that the former were first in her af-
fection, and that she, quite plainly, intended to first provide
for them and bestow the residue of her estate on the members

of the class who were second in importance. After having given one fifth of her estate to each of the four members of the first class, there was left but one fifth to be divided between the five members of the second class, or one twenty-fifth to each, instead of one tenth. That she intended the residue to go to them in equal shares and used the word "one tenth" by mistake, seems quite plain. The improper designation of the fraction may be rejected, as we have seen, and the will read as bequeathing the residue of the estate, left after setting aside four fifths for the first class, to the members of the second class in equal shares.

Probably as good an illustrative case of the power of judicial construction in such circumstances as we have here is *Ellis v. Fairbanks*, 132 Mass. 485, where the fractional parts of an estate devised or bequeathed exceeded the whole. The last was treated as referring to the residuum, the designation of the fractional part being wholly rejected as that would cure the difficulty and effect the testamentary purpose. Quite as much liberty was taken with the testator's language in *Waters v. Hatch*, 181 Mo. 262, 79 S. W. 916, where he willed sixty shares of stock in a particular bank to one person and twenty shares of stock in the same bank, to another, though he owned but sixty shares of such stock. However, he owned twenty shares of stock in another bank and the name thereof was substituted so as to carry out the manifest intent, the court remarking:

"By following the letter of the will and shutting the eyes to the intention of the testator, this provision of the will would be nullified. But if the intention is observed the clause is full of meaning. It is the duty of the court to give such construction to a will as will effectuate the manifest intention of the testator as discerned from the whole will itself, and not so construe it as to cause any of the provisions to perish."

So here, if the manifest intent of the testatrix to make a complete disposition of her estate and to treat the members of the first class of her beneficiaries as her children and as hav-

ing paramount claims upon her bounty, the last clause of the language in question is full of meaning and tells a pretty plain story, viz.: that the grandchildren should take in equal shares the residue of the estate left after providing for the members of the first remembered as indicated.

· In *Estate of Wood,* 36 Cal. 75, the word "testate" was substituted for the word "intestate." Otherwise the instrument purporting to be a will would have no effect whatever.

In *Metcalf v. Framingham Parish,* 128 Mass. 370, a defect of a material character was remedied by supplying language in place by implication so as to effect the intent of. the testator. Many instances are therein referred to of like dealing with such matters.

In *In re Donges's Estate,* 103 Wis. 497, 79 N. W. 786, in order to give the will the effect the testator intended, the real purpose was read out of it by interpolating a clause containing six words, and it was pointed out that the dominant rule of construction is that the intention of the testator, so far as reasonably readable out of his will, must govern and that all other rules are merely helpful indications to be given more or less weight according to circumstances, or none at all in case of countervailing considerations.

*By the Court.*—The judgment is affirmed. ·