## WILL OF JOHNSON.

*April 30—June 4, 1929.*

*J. W. Murphy, Jr.* and *R. A. Goodell,* both of Platteville, and *R. M. Orchard* of Lancaster, for Liddell and others, heirs at law, appellants and respondents.

For Kuhn and others, legatees and claimants as legatees, but not heirs at law, respondents and appellants, there was a brief by *Kopp & Brunckhorst* of Platteville and *Herman Pufahl* of Bolivar, Mo., and oral argument by *L. A. Brunckhorst.*

*H. E. Carthew* of Lancaster, for the executors.

OWEN, J.   The most important controversy involves the construction of the fourteenth paragraph of the will, reading: "I leave the rest and residue of my estate to my exec-

utors to be divided equally among the heirs herein named in this will." The county court construed the term "heirs" to mean "legatees," and distributed the residue of the estate equally between the legatees named in the will who were living at the time of the death of the testatrix. This construction is challenged by the legal heirs of testatrix named in the will, who claim they are entitled to the residue of the estate.

The term "heirs" is a technical term having a clear and undoubted meaning in the law. It means those to whom the law assigns intestate property. *Will of Cowley,* 120 Wis. 263, 97 N. W. 930, 98 N. W. 28. It is claimed that the testatrix could not have used the term in its legal sense because it is qualified by the indefinite article "the" rather than the possessive pronoun "my." Perhaps the use of the word "my" would have made a more definite as well as a more grammatically correct expression than results from the use of the word "the." However, the term "heirs" is the dominant word in the phrase and it should not be read out of the phrase or given a different meaning because the phrase on the whole is not the most graceful expression that can be thought of. While the use of the word "my" would perhaps be a more exact qualifying term and give rise to greater certainty, the use of the word "the" is not utterly ridiculous nor palpably incorrect.

By her will testatrix is disposing of her own estate. After making specific bequests to a number of persons, including strangers to her blood, she leaves the rest, residue, and remainder to "the heirs herein named in this will." The heirs of the estate of which she is disposing are those who would take the estate in the event of her dying intestate. The use of the word "the" is not so strange or improper as to compel the conclusion that the testatrix employed the word "heirs" in an irregular sense. A consideration of the surrounding circumstances confirms rather than challenges this conclusion.

Testatrix married William Johnson in 1874. He was fifty-one years of age. She was his second wife. He died in 1900 leaving no children. By his will he left his entire estate to the testatrix. We do not know the amount of the estate he left. No inventory was filed during the course of the proceedings probating his will. We do know, however, that the estate left by the testatrix amounts to approximately $170,000. The foundation of this estate was the estate left her by her husband, and represents his estate plus the accumulations and accretions thereto resulting from her management thereof. She managed this estate for twenty-six years, during which time she lived frugally. She managed the estate with ability and thrift. The inventory herein indicates that the bulk of her estate consists of real-estate mortgages. That during the twenty-six years of her management the estate more than doubled seems quite probable. If so, then her husband left an estate of about $85,000. She bequeaths to his relatives in the form of specific bequests the sum of $39,000. This would be one half of a $78,000 estate. It is entirely probable that his estate quite closely approximated that amount. It is apparent that her remembrance of her husband's relatives in her will was not due to natural love and affection. She had no acquaintance with any of them, unless it be Thomas R. Edgar, who lived for a time with her husband, but whether that was before or after her marriage to him does not appear. The will itself reveals the fact that she did not know the names of a number whom she made beneficiaries. Thomas R. Edgar and John E. Johnson predeceased her, which fact evidently never came to her knowledge. She did not know the names of Jasper Johnson's children. She did not know who Bessie Johnson, sister of her husband, married. It is evident that her remembrance of them in her will was the conscientious discharge of a recognized duty. She evidently regarded herself as in a sense a trustee of a portion of her husband's estate,

a faithful discharge of the duties as to which required her to pass on to his blood relatives a portion of the estate which she received from him at the time of his death. It seems quite probable that the specific bequests of $39,000 closely approximate one half of the estate of which he died seized. If this be true, it should be considered a voluntary and conscientious discharge of duty which would not characterize the conduct of all persons.

Having made specific bequests of $39,000 to her husband's relatives and $6,400 to her own relatives, is there any reason to believe that she intended her husband's relatives to share in the residue of the estate? Ten of her husband's, while only six of her, relatives are named in the will. If she used the term "heirs" in the sense of persons or legatees named in the will, then five eighths of the residue would go to her husband's heirs while only three eighths would go to her own, and her husband's heirs would get approximately two thirds of her entire estate while her own heirs would enjoy but one third thereof. Should these considerations still leave some doubt as to whether she intended the bulk of her estate to go to her husband's heirs, we nevertheless should accord to the term "heirs" its fixed and settled meaning, as that meaning should be ascribed to it, unless a different intention on the part of the testatrix clearly appears. We are not only convinced that such an intention does not clearly appear, but that it is quite improbable. The judgment should be modified by assigning the residue of the estate to the heirs of the testatrix who are named in the will.

Another question is raised with reference to the bequests found in the third and fourth paragraphs of the will. T. E. Edgar and John E. Johnson both predeceased the testatrix, and the question is whether the bequests in these paragraphs lapsed or whether the heirs of the respective legatees take under these bequests. It is claimed that the use of the words "heirs and assigns forever" indicates an intention on

the part of the testatrix that should the legatees therein named predecease her the legacies should go to their heirs and assigns. The words "heirs and assigns" when used in this connection have a well settled meaning in the law. They are universally held to constitute words of limitation, descriptive of the estate, and their use in such a connection does not constitute a substituted devise or bequest. *Estate of Judson,* 168 Wis. 361, 170 N. W. 254, and cases there cited; *Farnsworth v. Whiting,* 102 Me. 296, 66 Atl. 831. This rule of construction is recognized by counsel, but it is said that the word "or" should be substituted for the word "and," so that the bequest in the third paragraph should be to Thomas R. Edgar "or" to his heirs and assigns forever, and the bequest in the fourth paragraph should be to John E. Johnson, to have and to hold the same unto him "or" his heirs and assigns forever, in order to effect the intent of the testatrix. Counsel, however, give us very little help by way of demonstration of such an intent on the part of the testatrix. There is nothing in the evidence concerning surrounding circumstances that indicates such an intent. An examination of the will reveals that the expressions "heirs and assigns forever" are used with reference to these two bequests only, which perhaps suggests the query whether the testatrix had something in mind by the use of this phrase in connection with such two bequests and none others. If these words were used in connection with all bequests to the relatives of her husband and omitted in bequests to her own relatives, it might raise a query as to whether she intended their use in one connection and not in the other for some definite purpose. Thomas R. Edgar and John E. Johnson were both nephews of her husband. The beneficiaries mentioned in the fifth and seventh paragraphs are the children of a deceased nephew and a deceased niece of her husband. It could be argued that the fact that she recognized the children of deceased nieces and nephews in specific instances indicates her purpose to recognize them gen-

erally, and for this purpose the terms "heirs and assigns forever" were used in the third and fourth paragraphs. But the effect of this argument seems to be negatived by the sixth paragraph of the will, where the words are omitted in a bequest to nephews and a niece of her deceased husband. We cannot believe that the words "heirs and assigns forever" in the third and fourth paragraphs were used deliberately or to accomplish any specific purpose. In the first place, the expressions are not the same, indicating their use in a more or less haphazard way. We discover no reason for giving these words other than their fixed meaning. The county court was right in holding that these legacies lapsed.

It is further contended that the bequests in the sixth and seventh paragraphs are bequests to a class rather than individual bequests. This is material, because Mrs. Betsey Short, named in the sixth paragraph, is dead, and one of the children mentioned in the seventh paragraph of the will is dead. The county court held that the bequests to these deceased legatees lapsed. In this it was manifestly correct. The bequests contained in these two paragraphs are not to a group of persons. They are to individuals specifically named in the sixth paragraph and to two individuals who, though not named, were capable of identification, in the seventh paragraph. As said by Mr. Justice JONES in *Will of Griffiths,* 172 Wis. 630, 179 N. W. 768: "It will be found that in most of the cases when the courts have construed wills to have created classes having some such effect as is claimed by counsel for the appellants, the bequests have been made to 'heirs,' 'children,' 'grandchildren,' 'brothers,' 'sisters,' 'nephews,' 'nieces,' or to some other group of persons without specifically naming the beneficiaries."

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment in accordance with this opinion. Costs of both parties to be paid out of the estate.

ESCHWEILER, J., dissents.