WILL OF TRAUTWEIN : TRAUTWEIN and others, Appellants, vs. CLARK and another, Respondents.

*February 11—May 10, 1932.*

For the appellants Julia A. Trautwein, Sarah M. Trautwein, and Florence W. Sleeper there were briefs by *Lenicheck & Boesel* and *H. A. Kovenock,* all of Milwaukee, and oral argument by *Mr. Kovenock.*

*Otto Dorner* of Milwaukee, for the appellant Nellie A. Rice.

For the respondent Marion E. Clark there were briefs by *Lines, Spooner & Quarles,* attorneys, and *Chas. B. Quarles* of counsel, all of Milwaukee, and oral argument by *Chas. B. Quarles.*

For the respondent Stewart L. Clark, executor, there were briefs by *Houghton, Neelen & Houghton* of Milwaukee, and oral argument by *Albert B. Houghton.*

The following opinion was filed March 8, 1932:

FRITZ, J. The controversy is in relation to the proper construction of the seventh paragraph of the will, which is as follows:

"Seventh. All the rest, residue, and remainder of·my estate of whatever character, real, personal, or mixed, I dispose of as follows, to wit:

"(a) The first one-half thereof I give, devise, and bequeath to Julia A. Trautwein and Sarah M. Trautwein (who are the sisters of my deceased husband, George P. Trautwein), and to Florence W. Sleeper (who is the niece of my late husband), share and share alike, provided, however, that in case of the death of any or either of them, prior to

my death, her or their share or shares shall go to the survivors, provided, however, inasmuch as on August 16, 1927, I have given each of said last named persons, to wit: Julia A. Trautwein, Sarah M. Trautwein, and Florence W. Sleeper, the sum of nine thousand four hundred sixty-nine and 20-100 dollars ($9,469.20), I direct that such amount with interest at the rate of six per cent. per annum, interest to be computed annually and to the date of my death, is to be deducted from the share of each of said persons. In case of none of said persons surviving me, then and in that case I direct that such share of my estate is to be divided as follows: one-half of such share is to go to my sister, Nellie A. Rice, and the other half thereof to my niece, Marion E. Clark.

"(b) I give, devise, and bequeath one-fourth of the residue of my estate to my sister, Nellie A. Rice, and to her heirs and assigns, to have and to hold forever.

"(c) I give, devise, and bequeath all the rest, remainder, and residue of my estate to my niece, Marion E. Clark, to have and to hold forever."

As stated in that subdivision (a), Julia A. and Sarah M. Trautwein are sisters and Florence W. Sleeper is a niece of the husband of the testatrix. Nellie Rice is a sister of the testatrix. Marion E. Clark is her niece, and the only child of the testatrix's brother, Alfred J. Klumb, who, since the death of his wife during the early childhood of his daughter, had intrusted her to the custody and care of the testatrix, as a foster parent.

In the preceding paragraphs of the will, after the customary provisions for the payment of debts and expenses, etc., bequests were made as follows: Testatrix's household furniture and effects, wearing apparel, jewelry, and personal ornaments were bequeathed to her sister, Nellie A. Rice, and her niece, Marion E. Clark, with a request to carry out instructions expressed in a certain letter; a painting was bequeathed to Marion E. Clark with a similar request; legacies of $3,000 each were bequeathed to two nephews, who

were sons of Nellie A. Rice, with provisions for lapsing of either or both of those legacies in the event of the failure of either or both of the beneficiaries to survive the testatrix; $5,000 were bequeathed to her brother, Alfred J. Klumb, with provision that if the beneficiary failed to survive the testatrix, that bequest of $5,000 was to be to Marion E. Clark; and $5,000 were bequeathed to Stewart L. Clark, the husband of Marion E. Clark, in trust to pay to Alfred J. Klumb the income thereof and part of the principal, if necessary, for his support or care during his lifetime, and upon his death the remainder is to be paid to a designated charity. Testatrix designated Stewart L. Clark as the executor without bond.

Appellants contend that the payments of $9,469.20 made by testatrix in her lifetime to each of her husband's sisters and niece are to be considered as advancements in view of the testamentary provision that those sums, with interest to date of death, be deducted from their one-half of the entire residue bequeathed them by will; and that the total of those three payments of $9,469.20 each, with interest thereon as directed, should be treated and taken together with the residue of the estate (amounting to about $105,000), which is available after paying the specific legacies bequeathed in the preceding paragraphs, as the entire residuary fund to be shared in by all legatees, mentioned in the seventh paragraph, in proportion to their fractional shares as therein stated.

On the trial testimony was taken as to the surrounding circumstances, including the conditions and relationships of the interested parties, and a will made by the testatrix six months prior to her last will. The court found the facts stated above and also that on August 16, 1927, the date of the last will, the testatrix had given sums aggregating $9,469.20 to each of the following beneficiaries, viz.: Julia A. Trautwein, Sarah M. Trautwein, and Florence W.

Sleeper; and that each of those sums, with interest at six per cent. per annum from August 16, 1927, to the testatrix's death, amounted to $10,452.43. The court concluded that the testatrix intended by the seventh paragraph to bequeath one-half of the residue of her estate in equal shares to Julia A. Trautwein, Sarah M. Trautwein, and Florence W. Sleeper, and did provide that $9,469.20, with interest at six per cent. computed annually to the date of her death, should be deducted from the share of each of such persons; and intended to and did direct the executor to distribute the residue of her estate so as to pay to said beneficiaries each the equivalent of one-sixth part thereof, less the sum of $10,452.43. The court further concluded that the testatrix intended by the seventh paragraph to bequeath to Nellie A. Rice one-fourth of the entire residue of her estate first mentioned in the seventh paragraph; and to bequeath to Marion E. Clark all the "rest, remainder, and residue" of her estate after payment of the portions thereof so devised and bequeathed to Julia A. Trautwein, Sarah M. Trautwein, Florence W. Sleeper, and Nellie A. Rice. During the course of an opinion which the trial judge filed in connection with his findings and conclusions, he said:

"Two very different constructions are insisted upon. The amounts realized under one theory would vary materially from the amounts realized under the other theory as is shown by counsel's chart and computation in the brief on behalf of Mrs. Rice.

"A former will was made by Mrs. Trautwein and the copy presented was proven by competent evidence to be a copy of the former will. Under the testimony, if the clause in the will before the court is ambiguous, and it is necessary that surrounding facts and circumstances be considered, I am satisfied that the will of January 29, 1926, may be considered. If the former will is considered, it is at once apparent that while the two wills were similar in some respects, there were significant changes. Thus, Ransom and Stanley Rice

under the first will would receive $1,000 each, while under the present will they receive $3,000 each as special legacies. Decedent's brother, Alfred Klumb, receives the same amount in each will, but in the second will she provides that in the event of the death of this brother prior to testatrix his share shall go to Marion Clark, her niece. In the old will Nellie A. Rice and Marion Clark only have the use and enjoyment of one-fourth of the residue while now they receive absolute bequests and devises. Thus, decedent made important changes by which she favored her own next of kin rather than those of her husband.

"The testimony shows that the relations between the decedent and her husband's relatives were of a friendly nature, and the fact that there was some misunderstanding as to the proceeds of the sale of the farm did not seem to make any difference as to the friendly relations. It is also apparent from the testimony that decedent sympathized with the misfortunes of some of her own relatives. . . .

"A large portion of the testimony was received on the assumption that the clause in the will is ambiguous and that surrounding facts and circumstances in the making of this will must be considered.

"I have read and re-read the will and am satisfied that there can be but one construction and that that appears from the will itself. Thus, after she recites disposition of the 'rest, residue, and remainder' in subdivision (a), she refers to 'the first one-half thereof.' The first one-half thereof can only be one-half of the actual rest, residue, and remainder and not one-half with an advancement added to it, unless that may be implied from what is said later under the same subdivision. After referring to the amount she has given to each of the persons named, the words, 'is to be deducted from the share of each of such persons.' The share of each of said persons could be, thus far, none other than one-third of the one-half of the residue. This to me, after considering the will very thoroughly, seems to be the only logical construction to be placed on said clause and that such construction is fairly discernible from the instrument.

"I realize fully that Marion Clark profits very much by such construction, but I am also satisfied that even if the

testimony were to be considered, it would indicate that there was a close bond between testatrix and Marion Clark. However, I have come to the conclusion that the will speaks for itself, and if so, the court must see that the terms of the will are carried out."

Our analyses of the will, independent of the surrounding circumstances and conditions disclosed by the evidence, as well as our consideration of its provisions in the light of those circumstances and conditions, have resulted in the conclusions stated by the trial judge. The terms of the will, including the seventh paragraph, are plain, simple, and clear. Following the language and provisions, step by step, there is no ambiguity; the intent of the testator is fairly discernible; and there is no legitimate occasion for resorting to rules of construction to which courts are obliged to turn for aid to solve ambiguities.

As was said in *Mitchell v. Mitchell,* 126 Wis. 47, 49, 105 N. W. 216, 217:

"A will is not to be read in the light of rules for judicial construction merely because its meaning is challenged, and the challenge supported by reasoning on the assumption that such meaning is obscure. Often obscurity claimed to exist in such an instrument is but the mere creation of the mind of the claimant, not one originating with the maker of the paper. The first duty in examining a will to discover its purpose is to proceed as if it was unambiguously expressed. If, taking the will as a whole in the light of the subjects with which it deals, its meaning is plain, there is no legitimate room for judicial construction, and none should be attempted." *Benner v. Mauer,* 133 Wis. 325, 330, 113 N. W. 663.

In the commencement of the seventh paragraph the testatrix provides for the disposition of that portion of her estate which would constitute the remainder, after deducting the bequests made in the preceding paragraphs of the will. What amount out of that remainder are her husband's sis-

ters and niece to receive under subdivision (a) of the seventh paragraph?

That subdivision commences with the words "the first one-half thereof," meaning by the word "thereof," unquestionably, the remainder just previously described. Thus far the share of each of the husband's sisters and their niece could be no more than one-third of the one-half of that remainder, but, at that, all of that "one-half thereof" does not constitute the bequest to those three beneficiaries. The provisions in the balance of the sentence must be followed and applied to compute and ascertain the net amount actually bequeathed to the sisters and the niece. Those provisions prescribe that from the gross sum, which up to that stage of the distribution would constitute the one-third share of each of those three beneficiaries in one-half of the residue of the estate remaining, after deducting the bequests made in the preceding paragraphs, are to be deducted the sums of $9,469.20, which were theretofore given to each of those beneficiaries. That net amount, ascertainable only after making that deduction, constitutes all that is actually bequeathed by that subdivision (a) of the seventh paragraph to the three beneficiaries named in that subdivision. The balance which remains after deducting that net amount from the entire first half of the remainder of the estate, as described in the commencement of the seventh paragraph, continues undisposed of until the will is followed down to subdivision (c) of the seventh paragraph, and the provisions of that subdivision are applied. Meanwhile there is the disposition made in subdivision (b) to Nellie A. Rice of another one-fourth of the same remainder, which the will refers to in subdivision (a). Considerable significance may undoubtedly be attached to the fact that the scrivener (who for years had specialized in probate proceedings as the public administrator for Milwaukee county), in expressing the testatrix's intention in subdivisions (a) and (b) of the seventh paragraph, described

the respective shares bequeathed in those subdivisions in the terms of a fraction of the residue of the estate. Thus in subdivision (a) he used the words "the first one-half thereof." In subdivision (b) the words used are "one-fourth of the residue." Manifestly, if in the next subdivision it had been intended to bequeath to Marion E. Clark merely the remaining fractional interest, or an integral part of the original remainder, the scrivener, in subdivision (c), would have simply used similar terminology as in subdivisions (a) and (b), and stated that the remaining "one-fourth thereof," or "one-fourth of the residue," is bequeathed to Marion E. Clark. Instead of doing that he used words which convincingly indicate that he, and presumably his client, realized that in subdivision (c) disposition was being made of another residue than the residue which was dealt with at the commencement of the seventh paragraph, out of which there had been made the bequests provided for in subdivisions (a) and (b). Consequently, in providing for the bequest to Marion E. Clark, he no longer continued to describe her bequest as the remaining one-fourth interest of the original residue, but he used apt and proper words to dispose of all that would remain of the estate after applying, step by step, the preceding provisions. Thereby the entire estate was disposed of, and intestacy was avoided. It is true that the result favors Marion E. Clark considerably. Her share was thereby virtually augmented to the extent of the entire amount, which subdivision (a) directed should be deducted from the one-half of the original remainder in determining the net amounts actually bequeathed to the beneficiaries named in that subdivision. However, that may well have been the intention of the testatrix. As the trial judge said, the evidence indicates that there was a close bond between her and Marion E. Clark. The blood relationship had been supplemented by an evidently exceptionally affectionate foster relationship of parent and child; and since the latter's marriage her husband

was also included in the aunt's esteem to such an extent that she reposed in him such confidence that she nominated him as the executor of her will without bond, and intrusted to him as trustee a fund to be administered for the benefit of her brother. The record discloses ample reasons because of which the testatrix may well have concluded that neither her husband's relatives, nor even her sister, with whom her relations were most cordial, were entitled to the same bounty as her niece. They were not necessarily in the same class in that respect; and there is no resulting intestacy as to any part of the testatrix's estate. Consequently, there exists no compelling reason for attempting to equalize the respective interests of the beneficiaries, under the seventh paragraph of the will, by resorting to the doctrine of advancement.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J., took no part.

A motion for a rehearing was denied, with $25 costs, on May 10, 1932.