ESTATE OF SCHEFE: SCHEFE and another, by Guardian *ad litem,* Claimants and Appellants, vs. CROWLEY, Administrator, and another, Respondents.

*February 5—March 4, 1952.*

116

For the appellant Elmer Schefe there was a brief by *Benton, Bosser, Becker, Parnell & Fulton* of Appleton, and oral argument by *Edgar E. Becker* and *David L. Fulton.*

For the appellant Eugene G. Williams, guardian *ad litem,* there was a brief by *Williams, Williams & Meyer* of Oshkosh, and oral argument by *Eugene G. Williams.*

For the respondents there was a brief by *O'Leary, Joyce & Remley* of Neenah, for Melvin F. Crowley, administrator, and by *Cooke & Loehning* of Neenah, for Gaylord C. Loehning, guardian *ad litem,* and oral argument by *John W. O'Leary, Arthur P. Remley,* and *Gaylord C. Loehning.*

GEHL, J. Do the provisions of the joint will and the agreement apply to the property acquired by the husband after the death of the wife?

While we may not overlook nor ignore the terms of the will in considering the question, the important instrument is the agreement; it is essentially the terms of the latter which control. The rights and obligations of the parties are determined by its terms. Indeed, it has been held that despite the contract the will may be revoked or modified, but if it is, equity will interpose and permit specific enforcement of the agreement and prevent the perpetration of fraud which would result from its breach.

"It should be borne in mind that it is the contract and not the will that is irrevocable. The authorities generally hold that the will may be revoked, but the contract stands and will be enforced by equity if it be a valid contract and such enforcement is necessary for the prevention of fraud." *Doyle v. Fischer,* 183 Wis. 599, 606, 198 N. W. 763.

"According to sound theory, one of two testators who have made wills which are reciprocal in the circumstance that each will makes provision for the testator of the other will may revoke his will even after the death of the other testator, notwithstanding the wills were drawn and executed pursuant to a contract. This does not mean that the obligation of the contract is escaped by revoking the will. . . . Concisely stated, it is the contract and not the joint will which is irrevocable." Anno. 169 A. L. R. 24, 25. See also 4 Page, Wills (lifetime ed.), p. 833, sec. 1709.

That the parties had in mind only their joint property is evidenced in the recitals in the preamble to the contract. In the first of the above-quoted paragraphs they recite:

"Whereas . . . the parties also hold and have agreed to hold as *joint owners* all other property which they now own or may hereafter acquire *while both parties are living,* so that upon the death of one their entire estate becomes the sole and exclusive property of the survivor, . . ."

This recital indicates that they intended dealing only with property so held or owned.

In the second paragraph of the preamble there is this recital:

"Whereas the parties . . . having considered the ultimate disposition of their *joint* property after the death of the survivor, . . ."

This also expresses a purpose to deal only with property owned at the death of the first decedent. After the death of the first there could be no property owned jointly. In the same sentence they recite, "having . . . agreed to a joint disposition *thereof.*" The word "thereof" can have reference only to the *"joint* property" referred to earlier in the sentence.

Reference is again made in the agreement to "joint property" in the proviso which follows paragraph Two of the agreement.

Nothing inconsistent with the provisions of the agreement with respect to the property intended to be disposed of is found in the terms of the will. Paragraph Second of the will opens with the following: "All our property being held or intended to be held by us *jointly.*" That testators intended that the limitations and provisions of the agreement should be applied in the construction and effect to be given to the will is indicated by their recital in the same paragraph of the will, that they have agreed not to revoke, "except as limited in said written contract."

Reference is again made to the joint property of the parties in paragraph Third of the will, which is:

"To the end that the survivor shall have the full ownership of our estate, and in case any doubt shall arise *as to the joint interest* of any of our property, we mutually give, devise, and bequeath to each other all and any of our property which may be questioned as not held in joint tenancy at the time of death of either of us."

These provisions of the will, rather than evidencing a purpose contrary to that expressed in the agreement, are entirely consistent with those of the agreement.

It is apparent from the provisions of the will and the contract that the testators intended that the will should dispose of only the property owned by them jointly at the death of the first decedent, and that it was not intended that the provisions of the joint will should apply to property acquired by the survivor.

By the provisions of paragraph Fourth of the joint will the testators' farm is devised to the son, Elmer, "subject to the payments charged upon the real estate herein devised to him, to wit: To our daughter, Irma Schefe, $1,000, to our daughter, Florence Schefe, $1,000, and to our daughter, Evelyn Borchert, $1,000, to be paid one year after admission to probate of this will." Irma died after the death of her mother and predeceased her father. The trial court held that the legacy did not lapse but went to her father as her sole heir at law with the right in him to dispose of it in the second will.

Irma took nothing by the terms of this provision at the death of her mother. The gifts to her and her sisters provided by the terms of the joint will were deferred until the death of the surviving parent. The gifts are not to a class of persons but are to persons specifically named. Her gift lapsed at her death, *Will of Johnson,* 199 Wis. 154, 225 N. W. 818, and as a specific gift would ordinarily go

to the residue of the estate. *Harrington v. Pier,* 105 Wis. 485, 82 N. W. 345. This is not the ordinary legacy, however. It is a legacy charged on a devise of real estate, and—

". . . sinks into the devise, and the devisee takes the land free from any charge thereon, for the gift to him was in the first instance of the whole, the gift being afterward modified or charged, and, the modification failing, the gift remains complete as at first. . . ." 69 C. J., Wills, p. 1087, sec. 2323. See also 57 Am. Jur., Wills, p. 972, sec. 1447; 4 Page, Wills (lifetime ed.), p. 211, sec. 1436.

Elmer therefore took the farm freed from the charge to pay Irma the $1,000 legacy. With respect to that legacy the court was in error and the judgment should be modified accordingly.

The residuary legacy given to Irma by the terms of paragraph Sixth of the joint will was also to her individually and not as a member of a class. Her death prior to that of her father caused it to lapse. In such case it is the generally accepted rule that such lapsed legacy passes as intestate property.

"If the residuum of the estate is given to two or more individually, and not as a class, and the gift to one of them lapses, the question is raised whether such lapsed gift should pass under the residuary clause to the other residuary legatee, or whether it should pass to testator's next of kin as intestate property, in the absence of language in the will which tends to show the disposition which testator intends to make of it under such circumstances. It is now settled, by the weight of authority, that a lapsed part of the residuum does not itself pass into the remainder of the residuum; but that it passes to testator's next of kin as intestate property." 4 Page, Wills (lifetime ed.), p. 195, sec. 1430; *Harrington v. Pier, supra.*

The rule is subject to the qualification, however, that if the testator indicates an intention that the property pass in a different manner effect must be given to that intention.

57 Am. Jur., Wills, p. 978, sec. 1458. By the execution of the second will George Schefe made it clear that he did not intend to die intestate as to any of his property. By that instrument he disposed of all that he had or that had come to him otherwise than by the provisions of the joint will. The gift to Irma provided by the residuary clause of the joint will must therefore be distributed under the provisions of the second will.

*By the Court.*—The cause is remanded with instructions to modify the judgment in accordance with this opinion, and as so modified, the judgment is affirmed. No costs will be taxed. The fees of the clerk will be paid by the appellants.

CURRIE, J. (*dissenting in part*). While I agree with the statements made in the majority opinion to the effect that it is the contract and not the joint will which is irrevocable, I disagree with the interpretation of the contract reached in the majority opinion.

Just what did George Schefe and Anna Schefe, his wife, agree to do in the contract entered into between them under date of April 11, 1938? There can be but one answer and that is that they agreed: (1) To execute the joint will set forth in Exhibit "A" attached to the agreement; and (2) not to revoke or change such will during the lifetime of either and that the survivor would permit such will to stand irrevocably up to the time of his or her death.

These two covenants are so clear and unambiguous that it would seem superfluous to resort to any of the recitals in the "whereas" clauses of the preamble of the agreement to interpret and construe the actual covenants of the agreement.

Inasmuch as George and Anna Schefe did on April 11, 1938, coincident with signing the agreement, execute the joint will attached to the agreement as Exhibit "A," and by such agreement each had agreed that the survivor would permit such will to stand irrevocably up to the time of his or

her death, the next question is whether such joint will passed after-acquired personalty.

The residuary clause of the joint will read as follows:

"All the rest, residue, and remainder of our estate left after the foregoing provisions have been satisfied, we give, devise, and bequeath to our daughters, Irma Schefe, Florence Schefe, and Evelyn Borchert, share and share alike."

In 57 Am. Jur., Wills, p. 796, sec. 1210, it is stated:

"It has always been agreed that, as to personal property, a will speaks as of the death of the testator; both at common law and under modern statutes personal property acquired by the testator after the execution of his will passes thereunder, unless a contrary intention clearly appears. A general residuary clause, for example, or a general disposition of 'all my personal property' or 'all my personal estate' will operate to pass any personal property acquired by the testator after the execution of his will."

This same rule is stated in much the same language in the annotation entitled "When will deemed to cover after-acquired property" appearing in Anno. 75 A. L. R. 474, 477, as follows:

"The rule at common law, which has been adopted in most of the states by statute, is that as to personal estate a will speaks as of the time of the death of the testator, and after-acquired personal property passes under the will, unless a contrary intent clearly appears."

While the legislature early in the history of the state enacted sec. 3, ch. 66, R. S. 1849 (now sec. 238.03, Stats.), which provides that an after-acquired interest or estate in lands passes by a will, if such shall manifestly appear by the will to have been the intention of testator, there is no Wisconsin statute covering after-acquired personal property. Therefore, the common-law rule stated in the foregoing authorities is applicable in Wisconsin. It should be noted that while the law as to after-acquired realty is that it passes only by

will if there is an intent manifested in the will to so pass it, the common-law rule as to after-acquired personalty is that *it does pass under a general residuary clause unless a contrary intent clearly appears.*

The residuary clause in the joint will of George and Anna Schefe passed the after-acquired personalty, because there is no intent to the contrary appearing in the will. There being no ambiguous language in the will with respect to an expressed intent not to pass after-acquired personalty, there is no reason to resort back to the "whereas" recitals in the preamble of the agreement in an attempt to spell out such an intent.

Even by resorting to the "whereas" recitals in the preamble of the agreement we do not find an expressed intent not to cover after-acquired property but only a complete absence of any expressed intent with respect to the same whatever. The majority opinion spells out such an intent not to pass after-acquired personalty by implication from the fact that the recitals in the preamble refer only to joint property.

Inasmuch as the inheritance from the deceased daughter, Irma, constituted after-acquired personalty, it passed under the residuary clause of the joint will, and George Schefe having contracted not to revoke such joint will after the death of Anna Schefe, the claimants are entitled to recover on their claim for the proportionate amounts of said after-acquired personalty which they would have received if George Schefe had not breached the contract by attempting to make a different disposition of the after-acquired personalty in the second will.

However, I concur with that part of the majority opinion which holds that the lapsed residuary legacy of Irma Schefe under the joint will is disposed of by the second will made by George Schefe after the death of his wife, Anna Schefe. The joint will not having made provision for the disposition of such residuary legacy, there is no breach of contract in

George Schefe, either by codicil or new will made after the death of Anna Schefe, disposing of such lapsed legacy. I also concur with that part of the majority opinion which holds that Elmer Schefe took the farm freed from the charge of the $1,000 legacy to Irma.