Estate of Mangel: Mangel and others, Appellants, v. Strong, Administrator w. w. a., and another, Respondents.

*No. 86. Argued March 30, 1971.—Decided May 4, 1971.*
(Also reported in 186 N. W. 2d 276.)

56

For the appellants there was a brief by *Runkel & Runkel* of Port Washington, and oral argument by *Paul D. Runkel.*

For the respondents there was a brief by *Schmitt, Nienow, Nickel & Nolan* of Merrill, and oral argument by *Ralph H. Nienow.*

CONNOR T. HANSEN, J. The testator died on March 6, 1967, leaving a will executed on June 1, 1951, in which he bequeathed his estate as follows:

"2. I hereby give, devise and bequeath all of my property, both real and personal, of whatsoever kind or character and wheresoever situated, to my beloved wife Irene E. Mangel and to her heirs and assigns forever, who has been a constant source of comfort and inspiration to me and to whom I owe all my worldly success."

The testator married Irene E. Mangel in 1931. Mrs. Mangel had been previously married and had one son by that marriage, Daniel Torsrud, born July 18, 1915. Irene Mangel predeceased testator, having died four days earlier on March 2, 1967.

The trial court held that by paragraph two of his will, the testator intended to dispose of his estate by leaving his property to his wife's son, Daniel, in the event his wife predeceased him.

It is well settled that where a bequest is made to a named beneficiary who dies before the testator, the bequest lapses, unless the anti-lapse statute, sec. 238.13, is applicable. Sec. 238.13 provides:

> **Rights of issue of deceased legatee.** When a devise or legacy shall be made to any child or other relation of .the testator and the devisee or legatee shall die before the testator, leaving issue who shall survive the testator, such issue shall take the estate so given by the will in the same manner as the devisee or legatee would have done if he had survived the testator unless a different disposition shall be made or directed by the will.

It is also well settled that when a bequest is made to the testator's wife, and the wife predeceases the testator, sec. 238.13 does not prevent a lapse of the bequest, a wife not being a relative within the meaning of sec. 238.13. *Cleaver v. Cleaver* (1875), 39 Wis. 96; *Estate of Dodge* (1957), 1 Wis. 2d 399, 84 N. W. 2d 66.

The question raised on this appeal is whether the testator intended the words "and to her heirs and assigns forever" to be words of limitation or words of substitution. Appellants contend that these are words of limitation rather than substitution, and that the legacy lapsed when Irene Mangel predeceased the testator.

At common law, a devise to a person and his heirs and assigns created an estate in fee simple. The words "and to his heirs and assigns" were held to be words of limitation rather than substitution. Without the use of these words, a general devise passed only a life estate, unless an intention to pass a fee simple estate appeared in the will. In this state the necessity of using words of inheritance to devise an estate in fee simple has been abandoned. By sec. 238.02, Stats., a general devise cre-

ates an estate in fee simple unless a contrary intention appears in the will.

However, the meaning of the words of inheritance has not been changed by statute even though the necessity for the use of such words has been removed. The general rule is that the words "and to his heirs" or "and to his heirs and assigns forever," when used in a will are merely words of limitation and not of substitution, and hence do not prevent a lapse of a gift upon the death of the donee in the testator's lifetime, unless an intention to make a substitution can be gathered from other language in the will. *See* 96 C. J. S., *Wills*, p. 234, sec. 809; Annot., *Devise or bequest to one "or his heirs" or to one "and his heirs" as affected by death of person named before death of testator.* 78 A. L. R. 992, supplemented at 128 A. L. R. 94.

Under certain circumstances this court has held that the use of the words "and to his heirs and assigns" were not subject to construction for the purpose of showing a contrary intent of the testator.

In *Estate of Judson* (1919), 168 Wis. 361, 170 N. W. 254, the testator bequeathed his estate to two named beneficiaries and to their heirs and assigns. The two named beneficiaries predeceased the testator. This court held that the legacies lapsed and that the heirs of the named beneficiaries did not take under the words "heirs and assigns." The court stated that the words had a clear meaning and that no testimony to show a contrary intent of the testator was admissible:

"It is clear under the authorities that the words 'heirs and assigns' are merely words of limitation, descriptive of the nature of the estate given to the legatees. *Cleaver v. Cleaver*, 39 Wis. 96; *Van Beuren v. Dash*, 30 N. Y. 393, 414, 415; 2 Alexander, Wills, sec. 774. . . .

"It is insisted by appellants that the testator intended that his property should go to the named legatees and in case of their death to their heirs. The language of the will is very plain; there is no uncertainty in the meaning

of the language used, and under the established principles of law the heirs of the legatees named took no interest in the testator's property. Testimony to show a contrary intention was not admissible.

" 'It is only where uncertainty of sense is clearly apparent, in testamentary as in other instruments, that judicial construction is required or permissible.' *Holmes v. Walter*, 118 Wis. 409, 95 N. W. 380; *Mitchell v. Mitchell*, 126 Wis. 47, 105 N. W. 216; *Flint v. Wis. T. Co.* 151 Wis. 231, 138 N. W. 629; *Will of Owens*, 164 Wis. 260, 159 N. W. 906.

"In *Will of Ehlers*, 155 Wis. 46, 143 N. W. 1050, relied upon by appellants, after discussing the rule the court said:

" '. . . all in harmony with the rule that the legal intention of the testator is the one expressed by his language, though it may not be exactly the real intention he had in mind,—that his purpose can be given vitality only so far as it can be read reasonably out of the will. . . .' " *Estate of Judson, supra,* pages 364, 365.

Again, in *Will of Johnson* (1929), 199 Wis. 154, 225 N. W. 818, where the testatrix made specific bequests to named legatees "and to his heirs and assigns forever," and the named legatees predeceased the testatrix, the court held that the words "and to his heirs and assigns forever" could not be construed as words of substitution.

In *Will of Peters* (1937), 223 Wis. 411, 270 N. W. 921, the testator bequeathed a part of his estate to his wife and to her heirs and assigns forever. The testator's wife died during his lifetime and left as her heirs several children by a previous marriage. This court held that the legacy to the testator's wife lapsed and that her children did not take under the will. The court stated:

". . . While it is true that a will must be construed in accordance with the evident intention of the testator, when that intention is clearly expressed in appropriate language the instrument admits of no construction. *Estate of Allis* (1926), 191 Wis. 23, 209 N. W. 945, 210 N. W. 418; *Will of Trautwein* (1932), 208 Wis. 107, 241 N. W. 334.

"The argument that the words of the second paragraph 'and to her heirs and assigns forever' are words of substitution is ingenious but tenuous. From time immemorial, even under the rule of *Shelley's Case,* these words whether used in a will or a deed have been held to create an estate in fee simple. 1 Restatement, Property, secs. 27 c, 37 d. . . ." *Will of Peters, supra,* page 413.

In two more recent cases this court held that, under the particular facts presented, the words "and to his heirs and assigns" were used as words of substitution. In arriving at this result the court construed the foregoing words in the context of the entire will and found an intent on the part of the testator to make a substitutionary devise.

In *Estate of Hoermann* (1940), 234 Wis. 130, 290 N. W. 608, the testatrix died leaving certain property to a son, Ernst, who predeceased her. In paragraphs 20 and 21 of her will, testatrix left specific legacies to her son "and his heirs and assigns forever." In paragraph 24, she left the residue of her estate in equal shares to her 10 children, including her son Ernst, "unto them, share and share alike, and to their respective heirs and assigns forever." This court held that the legacy in paragraph 20 lapsed and that the words "unto him and his heirs and assigns forever" did not create a substitutionary devise. As to this paragraph of the will, the court stated:

". . . Presumptively, the words 'unto him and his heirs and assigns forever' are words of limitation. . . . [E]ven in the case of gifts of personal property, the phrase is presumed to have been used to limit the estate rather than to provide a substitutionary gift. *Will of Johnson,* 199 Wis. 154, 160, 225 N. W. 818; *Will of Peters,* 223 Wis. 411, 270 N. W. 921. . . .

"This does not mean that the context of the will may not disclose that words which are presumably words of limitation were in fact intended to create a substituted bequest. . . . [W]e discover nothing in the will or in the circumstances to support the conclusion that these

are words of substitution. . . ." *Estate of Hoermann, supra,* pages 134, 135.

However, the court held that the testatrix intended a substitutionary devise in paragraph 24 by the words, "unto them, share and share alike, and to their respective heirs and assigns forever." In so holding, the court relied on the presumption against an intent to die intestate that arises from the execution of a will, especially a will with a residue clause, and on the use of the word "respective" as implying a substitutional or representational intention of the testator.

"Coming to the twenty-fourth paragraph, three significant circumstances not present in the consideration of the twentieth and twenty-first paragraphs are at once disclosed. First, this is a residuary clause, and a lapse in the residuary clause will produce an intestacy unless the residuary devise or bequest creates a joint tenancy, and there is a very strong presumption against an intended intestacy—a presumption which becomes especially significant where the residuary clause is under construction. Second, there is no possibility of construing the residuary clause as creating a joint tenancy. Third, the phrase asserted by the administrator to constitute mere words of limitation is different from the phrase in the twentieth paragraph in that the words 'respective heirs and assigns' are used. . . . It is . . . obvious that a lapse of Ernst Hoermann's share in the residuary clause under the circumstances of this will results in an intestacy as to his share. There are no words in the clause appropriate to the creation of a joint tenancy. It must therefore be held that a tenancy in common was created, and it is elementary that there is no survivorship among tenants in common. Bearing in mind the strong presumption against a purpose to leave any portion of the estate undisposed of, the fact that the will had a residuary clause and the fact that a part of the residuary gift will fail and go as intestate property unless the words 're-spective heirs and assigns' are construed as words of substitution, it is evident that little more is required to warrant the latter construction. This is supplied by use

of the word 'respective.' It is generally held that the use of this word in connection with the words 'heirs and assigns' renders the words substitutionary in character. . . .

"It is our conclusion that the use of the word 'respective,' considered in connection with other circumstances heretofore set forth, warrants the conclusion of the trial court that the words in the twenty-fourth paragraph are words of substitution. The considerations leading to this conclusion are so strongly founded on the fact that this is a residuary clause and in the use of the word 'respective' that the distinction between the twenty-fourth clause and the twentieth clause readily appears and accounts for the difference in result." *Estate of Hoermann, supra,* pages 135–137.

In *Estate of Britt* (1946), 249 Wis. 30, 23 N. W. 2d 498, the testator by a residuary clause left the residue of his estate to his three brothers, "share and share alike" "to them and their heirs forever." One of his brothers predeceased the testator. This court held that the words "to them and their heirs forever," construed in the context of the will created a substitutionary devise and that the legal heirs of the predeceased brother took his share under the residue clause of the will. The court stated:

". . . The words 'heirs and assigns forever,' when used in a will, are ordinarily considered to be descriptive of the estate devised and their use ordinarily repels the inference that a substituted devise or bequest was intended. The context of the will, however, may indicate that such words were in fact intended to create such a bequest. . . . The use of the word 'respective' in connection with the words 'heirs and assigns' is treated as indicating that the gift is substitutionary at least in connection with the fact that the phrase to be construed occurs in a residuary clause. Some of the foregoing factors are not in this case. The clause in question, however, contains the phrase 'share and share alike,' and what amounts to the same thing, the phrase 'being to each a one-third part thereof.' These words can usually have no possible meaning in view of their distributive character, unless the gift to heirs is intended to be to them

as purchasers. See 3 Page, Wills, Lifetime Edition, p. 329. See also *Thomson v. Russell*, 131 S. C. 527, 128 S. E. 421. In the *Hoermann Case* we held that the circumstance that the residuary clause is being construed together with the natural presumption against intended intestacy leaves little more to be shown to warrant a conclusion that the heirs were intended to take by purchase. We consider that the words 'share and share alike' are sufficient to constitute such a showing. . . .

"The presumption of the law is against an intended intestacy as to any part of an estate because the will indicates a contrary general intention. This presumption is strengthened by the presence of a residuary clause, one obvious purpose of which is to preclude the occurrence of intestacies by unforeseen contingencies. In the light of this it is difficult to suppose that testator in the clause in question intended to produce from the very start an intestacy as to a substantial portion of the property dealt with in the residuary clause of his will. The strong likelihood is that he must have intended the gifts to the heirs to be substitutionary in character. The language of the will accommodates itself to such a construction and, while the matter is not free from doubt, we conclude that the trial court came to a correct conclusion." *Estate of Britt, supra,* pages 33, 34.

This court has held that a will is to be construed to ascertain the intent of the testator; the intent of the testator is to be determined from the words of the will and the surrounding circumstances at the time of its execution. *Estate of Boerner* (1970), 46 Wis. 2d 183, 174 N. W. 2d 457.

". . . Language in a will is used by a testator in reference to known surrounding circumstances. Specific words and phrases used by one testator in view of particular circumstances may have a materially different meaning or at least a different shade of thought content or of meaning than the same phrases or words used by another testator under different circumstances.

"Words are but arbitrary verbal or written containers carrying such thought or meaning as is placed therein by their user. The construction of a will by a court is the

ascertainment of that content or the meaning of the words, *i.e.*, the intention of the testator. To do this the court attempts to place itself in the position of the testator when he made his will and to consider the use of the words in relation to the surrounding circumstances. *Will of Ehlers* (1913), 155 Wis. 46, 143 N. W. 1050; see also *Will of Klinkert* (1955), 270 Wis. 362, 71 N. W. (2d) 279. . . ." *Estate of Breese* (1959), 7 Wis. 2d 422, 426, 96 N. W. 2d 712.

"When the surrounding circumstances have been considered and an ambiguity appears or remains, then only may there be a resort to extrinsic evidence. This is the clear rule in Wisconsin. The reason that we first look to surrounding circumstances is pointed out by McCormick in his text, *Evidence* (hornbook series), p. 448, sec. 220. He states that, unlike a contract, a will is a unilateral transaction consisting of words whose meaning is to be ascertained subjectively. The question is not what the usual usage of a word may be or the dictionary usage, but the testator's individual meaning." *Estate of Gehl* (1968), 39 Wis. 2d 206, 210, 211, 159 N. W. 2d 72.

Extrinsic evidence of the testator's intent may be resorted to only after the surrounding circumstances have been considered and an ambiguity appears or remains. *Estate of Gibbs* (1961), 14 Wis. 2d 490, 111 N. W. 2d 413. *Estate of Gehl, supra.*

An affidavit of prejudice was filed against the County Judge of Oneida county and DONALD E. SCHNABEL, County Judge of Lincoln county, was assigned this case. In his decision granting respondent's petition for construction of the testator's will, Judge SCHNABEL held that the words "and to her heirs and assigns forever," were sufficiently ambiguous in the light of the surrounding circumstances to permit consideration of extrinsic evidence of the testator's intent.

The trial court found an ambiguity existed on the basis of several factors. It found that paragraph two of the testator's will in which he disposed of his entire

estate constituted a residuary clause, and if the words were construed in the technical sense, the planned distribution of the testator's estate was no different than if he had died intestate.

"The presumption of the law is against an intended intestacy as to any part of an estate because the will indicates a contrary general intention. This presumption is strengthened by the presence of a residuary clause, one obvious purpose of which is to preclude the occurrence of intestacies by unforeseen contingencies. . . ." *Estate of Britt, supra,* page 34.

Second, the court relied on the testimony of the attorney who drafted the will taken at the proof of the will. The attorney stated he had drafted the will "with the understanding of the terms that [the testator] wished to have." The court found this was a surrounding circumstance creating an ambiguity because it indicated the scrivener had not necessarily used the words in their technical or legal sense.

"Atkinson, *Wills, supra,* p. 811, sec. 146, says:
" 'It is practically necessary that the testator's intent should be identified with that of the agent whom he employed to express the intent.' " *Estate of Gehl, supra,* page 215.

The third factor relied on by the court in finding an ambiguity was the testator's acknowledgement of the contribution of his wife by the use of the words, "to whom I owe all my worldly success." The court found that by using that phrase the testator recognized his indebtedness to his wife, "which proprietary interest, if assumed to exist, might again serve to refute the thought that he was limiting such interest to her alone and not her son in event of her prior death."

Relying on these three factors, the trial court found that the language used in paragraph two of the will that contained words, which presumptively have the technical

meaning of limitation, were in this case ambiguous and permitted consideration of extrinsic evidence of the testator's intent. We agree with this determination of Judge SCHNABEL.

After determining that an ambiguity existed, an evidentiary hearing was ordered. Judge SCHNABEL was unable to conduct the hearing because of illness, and FRANK W. CARTER, JR., County Judge of Vilas county, was then assigned to the case.

The attorney who drafted the will testified at the hearing. He stated that he had graduated from law school in 1949 and had practiced law from 1949 to March or April of 1951. He stated he had drafted about 15 wills before drafting the testator's will on June 1, 1951. He testified that in drafting the will, he had used the words that he felt would do what the testator wanted to do, and that he had attempted to convey in the language of the will that which he felt was appropriate to accomplish the things the testator wanted. He testified that he did not know the difference between the words "and heirs and assigns" and "or heirs and assigns." He testified that the words were not used in their technical or legal sense.

Hazel Schoenfelder, who had been a friend of Otto and Irene Mangel, testified that she had observed Daniel Torsrud working at the testator's resort from 1932 to 1951. In 1947, she had observed Dan working around the resort and had heard the testator say, "Why shouldn't he; some day it will be his any way." She also testified that in July or August 1951, the testator told her that he had made his will and that if everything went as it had been going that neither Dan nor Irene would have any worries in later life. She further testified that on more than one occasion she had heard the testator state that his property would never go to the Mangels.

Anita Bliesner, who was also acquainted with Otto and Irene Mangel, testified that the testator had a friendly

relationship with his stepson, and that in 1948, she had heard him introduce Daniel Torsrud as his son.

Marrian Doughty testified that she had been a friend of Irene Mangel, and that in the spring of 1951 she overheard the testator in a conversation with his wife, tell her, "You don't need to worry. The Mangels . . . will not get anything. It's yours and Dan's." She also heard the testator say that the Mangels were not going to get any part of his resort. She testified that Daniel Torsrud had worked around the resort; that the testator had had a friendly relationship toward him; and that this relationship continued to the time of his death.

Gertrude Mangel, the testator's sister, testified that sometime in 1963, the testator told her that he should make a new will, and that he had a will but it did not provide for disposition of the property in the event both he and his wife died at one time.

Following the taking of testimony as to the testator's intent, Judge CARTER held that it was the intent of Otto Mangel to leave his property to the son of Irene Mangel in the event of her prior death. In so holding, he relied on the making of the will as evidence of an intent not to die intestate. *Estate of Britt, supra; Estate of Hoermann, supra.*

He also relied on the testimony of the attorney who drafted the will that he was not aware of the strict legal meaning of the words, "and to his heirs and assigns forever," and that he had attempted to draft a will in accordance with the intent of the testator. While testimony of an attorney, as to statements made to him by the testator, is not considered a surrounding circumstance in determining whether words used in the will are ambiguous, *Estate of Breese, supra,* once it has been determined that the words of the will are ambiguous in the light of the surrounding circumstances, the attorney who drafted the will may testify as to the testator's intent.

". . . [T]his court has several times held that communications between an attorney and a client concerning a last will and testament, the transactions which led to the execution of the will, and the circumstances surrounding the execution of the will, do not enjoy the status of privileged communications after the client's death in a suit between the testator's heirs, devisees, legatees or other parties who claim through him.

". . . [T]he testimony of the attorney as to statements made to him by the testator are admissible on the question of intent, once such extrinsic evidence became admissible. . . ." *Estate of Boerner, supra,* page 192.

Finally, Judge CARTER relied on the addition of the clause, "who has been a constant source of comfort and inspiration to me and to whom I owe all my worldly success," and the testimony offered at the hearing concerning the testator's intent. He held that by this clause the testator recognized the part his wife had played in helping him accumulate his property, and that this, together with the testimony of witnesses that the testator had stated the property would belong to Dan, showed that the intent of the testator was to leave his property to Daniel Torsrud in the event his wife predeceased him.

We conclude that the will was properly construed. Also, we do not consider the determination made in this case to be a modification, extension, or change of the existing case law in this state. It is a decision based primarily upon the authority of *Estate of Hoermann, supra,* and *Estate of Britt, supra.*

*By the Court.*—Judgment affirmed.