In the Matter of the Estate of THEODOR KUTZNER, Also Known as THEODORE KUTZNER, and Also Known as THEO. KUTZNER, Deceased.

Surrogate's Court, Queens County, February 21, 1940.

*Paul Joachim*, for the petitioner.

HETHERINGTON, S. Decedent died on January 2, 1940, survived by two sisters, as his sole distributees. Ten days later a safe deposit company delivered to the clerk the instrument now offered by them for probate. To express his testamentary desires, decedent employed a stationer's " will " form, which consists of a single sheet of paper folded in the middle so as to make four pages. The provisions disposing of his entire estate equally to his sisters and designating his brother-in-law as sole " executive " without bond were typewritten on the upper half of the first page. At the bottom thereof was a printed clause for the appointment of an executor, and in which the name and address of the executor, previously designated, were typewritten in the blank spaces provided therefor. At the top of the first inside page appeared the testimonium clause in which the day and month (August 15) were written in ink, and the year (1930) printed. Immediately below and to the left appear the signatures of three witnesses, and to the right and opposite there to, on a printed dotted line, the signature of the decedent. Below these signatures there was a printed attestation clause, with blank

spaces for inserting the name of the testator and other information, and printed lines for the signatures and addresses of the witnesses. None of these blank spaces was filled in. The two subscribing witnesses produced by the petitioners have established to my satisfaction that the foregoing description of the form and content of the instrument represents its condition at the time of execution, and that, except for ink markings and an addition made subsequent thereto, all requirements entitling it to probate were fully complied with.

The paper, as offered, discloses that, commencing at the top of the first page and from opposite corners, diagonal and intersecting lines were drawn in ink through the printed and typewritten clauses embracing the disposition of decedent's property and the appointment of his executor. Immediately below these lines and in what was a blank space at the time of execution, testator inserted in his own handwriting the following: " To than this may be this will is no good  I hav'nt been there when it was made out  Fred Allen has one in his position please have it void make this will no good *Sighn* Theodor Kutzner." Horizontal lines were drawn in ink through the printed clause, at the bottom of the page, providing for the appointment of an executor and the typewritten insertions previously mentioned. Whirls and loops were made in ink through the testimonium and attestation clauses, extending downward, in the case of the former, to the top of some of the letters in decedent's name. Several slanting lines were drawn in ink through the signatures of the three subscribing witnesses. At the bottom of the fourth or back page, the letters " N G " were written in ink. Despite these marks of defacement, the provisions of the instrument and the signatures are clearly discernible.

No one questions the validity of the instrument which is understandable in view of the fact that the same persons are both legatees and distributees. Even though probate be uncontested, it is the duty of the surrogate, before admitting a will to probate, to inquire particularly into all the facts and circumstances to the end that he be satisfied with the genuineness of the will, and the validity of its execution. (Surr. Ct. Act, § 144.) The will referred to in the statute necessarily means the decedent's last will and testament, the final disposition of his property, speaking as of the time of testator's death. An instrument which has been revoked and not revived before death cannot be regarded as a last will and testament. The condition of the propounded paper compels an inquiry as to whether it was revoked by the testator in a manner authorized by the statute.

It is well established that there can be no revocation of a will, except as prescribed by statute. (*Delafield* v. *Parish*, 25 N. Y. 9; *Lovell* v. *Quitman*, 88 id. 377, affg. 25 Hun, 537; *Burnham* v. *Comfort*, 108 N. Y. 535; *Matter of Evans*, 113 App. Div. 373.) While section 34 of the Decedent Estate Law sanctions several methods by which a will may be revoked, only two of them can be considered here as having been resorted to, namely, cancellation and obliteration. In my judgment the instrument has been canceled and obliterated. In discussing the origin and meaning of the word " canceled " as used in the statute, Surrogate CHURCH in *Matter of Alger* (38 Misc. 143, 144–146) says: " The word ' cancel ' is derived from the word ' cancelli,' cross-bars or lattice work. Hence, as originally used, referred to making cross-lines on writing * * *. There is no doubt that originally, the word ' cancel ' was confined to the making of cross-marks, indicating the lattice work from which it was derived, and grew to be adopted for such purposes in consequence of the fact that in early times few persons were capable of writing, and, therefore, were permitted to manifest their intention by drawing lines across the face of a paper." While the lines here drawn conform approximately to the original definition of the word, neither their number, form nor direction are controlling. The test appears to be, where words of revocation are used, their extent and location. Where the words were wholly written upon the margin, rather than upon the face of the instrument, the writing was not regarded as a cancellation. (*Matter of Akers*, 74 App. Div. 461; affd., 173 N. Y. 620.) If the markings do not affect the will in its entirety, or a vital part thereof, there is no revocation by cancellation. (*Matter of Tremain*, 169 Misc. 549; affd., 257 App. Div. 996.) If, on the other hand, the words of revocation are actually written across the written words of the instrument, the will is revoked by cancellation. (*Matter of Parsons*, 119 Misc. 26; affd., 204 App. Div. 879; affd., 236 N. Y. 580.) Cross lines, conforming to the test stated, are equally effective as words of revocation. (*Matter of Alger*, *supra; Matter of Barnes*, 76 Misc. 382, 384.) Here the cross lines were drawn through the entire will. The lines drawn through the signatures of the witnesses amount to an obliteration (*Matter of Kuntz*, 140 Misc. 598), even though they be discernible. (*Matter of Parsons*, *supra*.) Of course, where either method is employed, the intent to revoke must be coexistent with the physical act of cancellation or obliteration. In the absence of extrinsic evidence, proof of intent to revoke the will must be derived from the instrument itself. The clause inserted by the testator in his own handwriting in the middle of the first page expressly declares that the will is " no good." His further direction that

the one in the "position," construed to mean possession, of the executor should be made "void" and the propounded instrument "no good" manifest a clear intention that the entire will and not a part thereof, should no longer be operative. Cancellation does not require a signature under the statute, but in this case a signature was added. The act, the words, the signature, exhibit the testator's intent to cancel, obliterate and annul the instrument. The finding of the will in the testator's safe deposit box with its markings and written words of revocation raised the presumption that the cancellation was done by him with the intention to revoke it *animo revocandi*. Where a will after the same has been canceled is preserved, in the absence of facts of some kind to show that others had an interest in or opportunity to cancel the instrument, it will furnish the best evidence as to the intention of the maker to destroy its force and effect. (*Matter of Parsons, supra.*) The facts and circumstances establish a clear intention of the decedent to revoke his will which was consummated by his act of cancellation and obliteration, and having revoked the same, probate is denied. Submit decree accordingly.