Fuld, J.
Merritt Bonner died on October 2,1963 and, a short time thereafter, a 1959 will which had been cut in two was found among his papers. It was contained in an envelope (bearing the legend “Last Will and Testament of Merritt Bonner ”) also cut in two, and it seems clear that both will and envelope had been severed at the same time. The separate pieces were enclosed in a larger envelope which, though not produced, bore—-according to the legatee-executrix who found it—the words, “ My Will ”, in the decedent’s handwriting. The executors named in the instrument offered it for probate. Their petition was opposed by the decedent’s father on the ground, among others, that it had been revoked.
Despite objections voiced by the contestant, the proponents were permitted at the hearing to adduce the testimony of two witnesses to the effect that about a year before he died the decedent had stated that he had cut his will by mistake while cutting up old insurance papers. One of these witnesses, the decedent’s aunt, assured him that, since he had a copy of the document, its validity remained unimpaired, and, the lady stated, he appeared satisfied with this advice. On the other hand, another witness, called by the contestant, declared that Bonner had repeatedly spoken of his intention to change his will and, in fact, mentioned that he had actually cut it.
The Surrogate, noting that he was attaching no weight to the decedent’s reported declarations, concluded, nevertheless, that the will had not been revoked and that it should be admitted to probate. The Appellate Division affirmed without opinion; however, two justices dissented on the ground that the mutilated condition of the will gave rise to a presumption of revocation which *11 was not overcome by evidence of the manner in which the decedent had kept the pieces.
There can be no dispute about the governing rule of law. If a will had been in the custody of the testator and is found among his personal effects, after his death, cut or otherwise mutilated in any of the modes prescribed by statute (Decedent Estate Law, § 34), there is a presumption that the cutting or mutilation was effected by the testator animo revocandi. (See Matter of Hopkins, 172 N. Y. 360, 363-364; Matter of Schoengold, 182 Misc. 274, 278; Matter of Ten Eyck, 155 Misc. 443; Matter of Casey, 126 Misc. 749, 752-753; see, also, Matter of Fox, 9 N Y 2d 400, 407-408; Matter of Staiger, 243 N. Y. 468, 472; Matter of Kennedy, 167 N. Y. 163, 168.) This presumption may, of course, be overcome by adequate proof to the contrary but such proof does not include the declarations of the decedent designed to establish the continued existence of the will, unless they were made “ in connection with some act under such circumstances as to become a part of the res gestae (Matter of Kennedy, 167 N. Y. 163,172, supra.) As we wrote in the Kennedy case (167 N. Y., at p. 170), “ The whole course of legislation in this state from the earliest times to the present day, concerning the execution and revocation of wills, discloses a clear purpose to * * * sweep away all parol proof of testamentary intentions, and, hence, to exclude statements or declarations of the deceased.” (See, also, Matter of Fox, 9 N Y 2d 400, 406, supra; Matter of Staiger, 243 N. Y. 468, 472, supra; Throckmorton v. Holt, 180 U. S. 552, 581; but cf. 6 Wigmore, Evidence [3d ed., 1940], §§ 1736, 1737, pp. 111-118, and cases cited.) Were the rule otherwise, it has been said, “ there would be apt to arise a contest in regard to the number and character of conflicting declarations of the deceased which he could neither deny nor explain, and in the course of which contest great opportunities for fraud and perjury would exist. The statutes as to wills were passed, as we believe, for the very purpose of shutting out all contests of such a character.” (Matter of Fox, 9 N Y 2d, at p. 406, quoting from Throckmorton v. Holt, 180 U. S. 552, 581, supra.)
We adhere to our long-settled rule and, like the courts below, refrain from considering the conflicting reports of the decedent’s oral declarations. With such testimony out of the case, *12 the only remaining evidence is that the two pieces of the document were found in an envelope on which he had written the words “ My Will Obviously, such evidence is highly equivocal. The decedent may have kept the will as a record of its provisions or, perhaps, as a model for future testamentary disposition ; or, after cutting it in two to effect a revocation, he may have had a change of heart and placed the pieces in the outer envelope with the idea—futile, of course, absent compliance with the statutory requirements (see, e.g., Matter of Stickney, 31 App. Div. 382, 389, affd. 161 N. Y. 42; see, also, Matter of Foulds, 21 Misc 2d 402, affd. 13 A D 2d 16, affd. 10 N Y 2d 1027) — of reviving the instrument. In short, the proof in the record before us that the decedent retained in an envelope the will which he had cut in two is insufficient, as a matter of law, to overcome the presumption that the mutilation was an act of revocation.
The order of the Appellate Division should be reversed, with costs in all courts to appellant payable out of the estate, and the matter remitted to the Surrogates’ Court of New York County for further proceedings in accordance with this opinion.
Chief Judge Desmond and Judges Van Voobhis, Bubke, Scileppi and Bebgan concur with Judge Fuld; Judge Keating dissents and votes to affirm for the reasons set forth in the opinion of the Surrogate.
Order reversed, etc.