In the Matter of the ESTATE of Philip BOGNER, Deceased.

Curtis FALLGREN, Sr., Appellant,

v.

Helen Bogner FALLGREN, et al., Respondents.

Civ. No. 8588.

Supreme Court of North Dakota.

Feb. 18, 1971.

Rehearing Denied March 30, 1971.

On February 13, 1956, Philip Bogner made and executed his Last Will and Testament. Paragraph Three of Mr. Bogner's will devised and bequeathed to his daughter, Helen Bogner Fallgren, and to her husband, Curtis Fallgren, or to the survivor of them, each an undivided one-half interest in certain real and personal property, which included Mr. Bogner's farm implement business, described in said Paragraph Three. Helen Bogner Fallgren is the sole heir of Mr. Bogner and, at the time of the execution of Mr. Bogner's will, the appellant, Curtis Fallgren, and Helen Bogner Fallgren were husband and wife, to which marriage eight children were born. From 1946 until October of 1956, Curtis Fallgren was employed in his father-in-law's business, for which employment he received an annual salary of $5,800 and a home was furnished for his family and himself. Late in 1956, Mr. and Mrs. Curtis Fallgren and their family moved to Oregon where they purchased a poultry ranch for the sum of approximately $20,000. The money was acquired through a loan from an insurance company on a policy purchased by Mr. Bogner for his daughter, Helen Bogner Fallgren. Mr. Bogner later repaid the $20,000 loan on this insurance policy when it became apparent that Mr. Fallgren would be unable to do so. Some time thereafter it became known to Mr. Bogner, both through information furnished to him by a Dickinson physician and in conversation with his daughter, Mrs. Curtis Fallgren, that his son-in-law had been participating in depraved moral conduct, including incestuous relationships with one of his daughters, before the family had moved to Oregon, and that such activity continued for some years thereafter. Partly upon the advice of her father, Mrs. Fallgren obtained a divorce from her husband in Oregon in March of 1965, upon grounds of infidelity, and was awarded custody of the minor children. Later in that year, Mrs. Fallgren returned to Dickinson, North Dakota, where her father provided a home for her and her children. About the time of the divorce in 1965, Mr.

---

Freed, Dynes & Malloy, Dickinson, for appellant.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for respondent Helen Bogner Fallgren, individually, and as executrix of the Estate of Philip Bogner, deceased.

PAULSON, Judge (on reassignment).

This case is on appeal from a June 23, 1969, judgment issued by the district court of Stark County, North Dakota, which affirmed an order of the county court of Stark County admitting the Last Will and Testament of Philip Bogner to probate. A demand for a trial de novo has been made.

Bogner had a conference with the Fallgren family counselor and social worker in Oregon and Mr. Bogner informed him that because of his son-in-law's conduct, Mr. Bogner was going to arrange his estate so that Mr. Fallgren would be disinherited. At Christmastime in 1965, Mr. Bogner informed his sister that Mr. Fallgren was not going to inherit any part of the Bogner estate. In addition, Mr. Bogner made the same declaration to one of his employees, Ernest Ficek. On September 3, 1968, Mr. Bogner died and his Last Will and Testament was subsequently found in a metal box taken from his office safe. Upon examination of the will by Mr. Bogner's daughter and in the presence of Mr. Bogner's attorney and of several other witnesses, it was found that Paragraph Three of Mr. Bogner's Last Will and Testament read, in pertinent part:

"THIRD: To my daughter, Helen Bogner Falgren, and *her husband, Curtis Falgren,* or to the survivor of them * * *" [Emphasis ours.]

and that Paragraph Six of Mr. Bogner's Last Will and Testament read, in pertinent part:

"SIXTH: I appoint my daughter, Helen Bogner Falgren, to be my Executrix under this Will, and if she fails or ceases to act, I appoint *Curtis Falgren, Sr., husband* of my daughter, Helen Bogner Falgren, to be Executor and successor Trustee of the trust hereinabove provided. If my daughter does not survive me, or dies before a grandchild of mine attains the age of 21 years, without having appointed a guardian of the persons and estates of my grandchildren, I appoint *Curtis Falgren, Sr.* to be guardian of the persons of such grandchildren and of their estates. * *" [Emphasis ours.]

However, lines had been forcefully drawn through the above emphasized words so that the contested portions of Paragraph Three and of Paragraph Six of Mr.

Bogner's Last Will and Testament then read as follows:

"THIRD: To my daughter, Helen Bogner Falgren, and ——— ——— ——— ——— or to the survivor of them * * *"

*       *       *       *       *       *

"SIXTH: I appoint my daughter, Helen Bogner Falgren, to be my Executrix under this Will, and if she fails or ceases to act, I appoint ——— ——— ——— ——— of my daughter, Helen Bogner Falgren, to be Executor and successor Trustee of the trust hereinabove provided. If my daughter does not survive me, or dies before a grandchild of mine attains the age of 21 years, without having appointed a guardian of the persons and estates of my grandchildren, I appoint ——— ——— ——— to be guardian of the persons of such grandchildren and of their estates. * * *"

These obliterations were not in existence at the time the will was originally executed; nor were any new dispositive provisions or other testamentary dispositions of the testator found; nor were the obliterations initialed, dated, or signed by the testator; nor were the obliterations attested by any witnesses thereto.

The issues are as follows:

1. Did the decedent, Philip Bogner, make the obliterations found in his Last Will and Testament?

2. If Mr. Bogner made the obliterations in his will, did he have the intent to revoke his bequest and devise to Mr. Fallgren?

3. Did Mr. Bogner intend to add any further dispositive language to his will?

4. If Mr. Bogner made these obliterations, do they become effective within the purview of the following provisions of the North Dakota Century Code?

56–04–01, N.D.C.C. "Mode of revoking a will.—Except as is otherwise

provided in this chapter, a written will, in whole or part, can be revoked or altered only:

1. By a written will or other writing of the testator, declaring such revocation or alteration and executed with the same formalities with which a will should be executed by such testator; or

2. By being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking the same, by the testator himself or by some other person in his presence and by his direction."

56–04–02, N.D.C.C. "How cancellation must be proved.—When a will is canceled or destroyed by any person other than the testator, the direction of the testator and the fact of such injury or destruction must be proved by two witnesses."

56–04–03, N.D.C.C. "Effect of partial erasure or obliteration.—A revocation by obliteration on the face of the will may be partial or total, and is complete if the material part is so obliterated as to show an intention to revoke, but when, in order to effect a new disposition, the testator attempts to revoke a provision of the will by altering or obliterating it on the face thereof, such revocation is not valid unless the new disposition is legally effected."

56–05–01, N.D.C.C. "Intention of testator governs interpretation.—A will is to be construed according to the intention of the testator. When his intention cannot have effect to its full extent it must have effect as far as possible."

56–05–02, N.D.C.C. "Will excludes oral declarations as to intention.—If uncertainty arises upon the face of a will as to the meaning of any of its provisions, the testator's intention is to be ascertained from the words of the will taking into view the circumstances under which it was made, exclusive of his oral declarations."

Section 56–04–01, N.D.C.C., provides that a will may be revoked in whole or in part. Such revocation can be accomplished by burning the will, tearing it, canceling it, obliterating it, or destroying it, with the intent of revoking the same. Furthermore, there is a presumption that obliteration of a will was effected by the testator where the will had been in the custody of the testator, where after his death the will was found among his personal effects, and where the obliteration fell within any of the statutorily prescribed modes of revocation. In re Bonner's Will, 17 N.Y.2d 9, 266 N.Y.S.2d 971, 214 N.E.2d 154, 28 A.L.R. 3d 990; 57 Am.Jur., Wills § 550. In the instant case, in Paragraph Three and in Paragraph Six of Mr. Bogner's Last Will and Testament there were lines drawn which obliterated certain portions of those paragraphs of his will. The will was found in the safe located in Mr. Bogner's business office in Dickinson. The will was found in a metal container among other personal effects and papers belonging to Mr. Bogner. The will was in Mr. Bogner's possession until his death. Thus it was Mr. Fallgren's burden to rebut the presumption that the obliterations were made by Mr. Bogner. In Re Saunders' Will, 177 N.C. 156, 98 S.E. 378 (1919); Michigan Trust Co. v. Fox, 159 N.W. 332 (Mich. 1916); 28 A.L.R.3d 1003. Mr. Fallgren has failed to rebut this presumption, since he has produced no evidence which would indicate that this presumption is rebutted. The lines drawn through the name "Curtis Fall*g*ren" and the surrounding words constitute an obliteration within the meaning of the North Dakota statute. Black's Law Dictionary (4th Ed.1951), citing In Re Kutzner's Will, 173 Misc. 776, 19 N.Y.S.2d 13, 16, states that:

"Lines drawn through the signatures of the witnesses to a will amount to an 'obliteration,' though the signatures be discernible."

Thus, obliteration is an erasure or a blotting out of written words. Section 56–04–01, N.D.C.C., further requires that this obliteration must be done with the intent and for the purpose of revoking those portions of a will so obliterated. Section 56–04–03, N.D.C.C., allows obliteration on the face of a will to be either partial or total, and revocation is complete when a material part is so obliterated as to show an intention to revoke. While the above authority indicates that proof of an intent may be assumed from the fact that the obliteration occurred, in the instant case it is proper to show other facts and circumstances, including the declarations of the testator which would indicate that it was his intent to revoke a portion of his Last Will and Testament. Janssen v. Kohler, 71 N.D. 247, 299 N.W. 900 (1941); 57 Am.Jur., Wills § 562, p. 385; 31A C.J.S. Evidence § 258, p. 678. In addition, § 56–05–01, N.D.C.C., requires that a will is to be construed according to the intention of the testator and that this intent must have effect as far as possible. Thus, in the instant case, the county court and the district court would have been derelict if they had not received evidence as to the proof of intent, and construed such evidence when giving effect to the will. Since it is proper to consider the evidence with reference to Mr. Fallgren's infidelity and the subsequent divorce from Mr. Bogner's daughter, and its profound impact on Mr. Bogner, certainly such evidence would buttress the presumption that Mr. Bogner obliterated those portions of his Last Will and Testament concerning his ex-son-in-law as to any prospective inheritance that Mr. Fallgren might receive under Mr. Bogner's will.

Having determined that Philip Bogner obliterated those contested portions of his will, we are confronted with the next issue, which is: Did Mr. Bogner intend to add any further dispositive language to his will, and, if so, can his intent to make further disposition become effective in view of the last part of § 56–04–03, N.D.C.C., which provides:

"* * * but when, in order to effect a new disposition, the testator attempts to revoke a provision of the will by altering or obliterating it on the face thereof, such revocation is not valid unless the new disposition is legally effected."

Mr. Bogner made no attempt to make a substitute provision either on the will in question or by the addition of a codicil or by the drafting of any other instrument which could be construed as being a new disposition. In fact, Mr. Bogner deleted the name of Curtis Fallgren from Paragraph Three of his Last Will and Testament so that the devise and bequest then left an undivided one-half interest to Mr. Bogner's daughter, Helen; and the remaining undivided one-half interest, which previously had been bequeathed and devised to Curtis Fallgren, was revoked. The obliterations found in Paragraph Six of Mr. Bogner's will, wherein the name of Curtis Fallgren was obliterated as a secondary executor and as a guardian, also are valid because the evidence supporting the intent to revoke the bequest and devise contained in Paragraph Three is equally applicable to Paragraph Six of Mr. Bogner's will; and for the further reason that each of the parties concedes that no additional dispositive language was needed because of the fact that no property is passing pursuant to the provisions of Paragraph Six. This particular issue is of no significance because Mrs. Helen Bogner Fallgren has qualified as the executrix and has assumed the guardianship pursuant to Paragraph Six of Mr. Bogner's will. Thus the second part of § 56–04–03, N.D.C.C., is not applicable, as there was no new disposition to which legal effect had to be given in the form of dating, signatures, and attestation, in order to comply with the provisions with reference to the execution and attestation of a codicil or a will.

Finally, it must be decided whether or not the undivided one-half interest originally devised and bequeathed to Curtis Fallgren is to pass under the will or by the

laws of intestacy; and if it passes under the will, does Mr. Bogner's daughter become the beneficiary, who, originally, was to receive an undivided one-half interest by Paragraph Three of the will; or should it become a part of the residuary estate. This Court held, in In Re Glavkee's Estate, 76 N.D. 171, 34 N.W.2d 300, 301 (1948), in paragraphs 1 and 7 of the syllabus:

"1. The sole purpose of the court in construing a will is to ascertain the intention of the testator as the same appears from a full and complete consideration of the will, when read in light of the surrounding circumstances. If that intent can be ascertained and is not violative of some rule of law which exists for the purpose of limiting the power of the testator to dispose of his property as he wishes, such intent must prevail.

"7. The making of a will gives rise to a presumption against intestacy, or that the testator intended to die intestate as to any part of his property, and in the absence of an indication in the will to the contrary, the testator is presumed to intend to dispose of his entire estate."

Since there is no evidence in the case at bar which would rebut the presumption that Mr. Bogner did not wish the property mentioned in Paragraph Three of his will to pass by the laws of intestacy, we hold that the property in question should pass pursuant to the provisions of the will, and that this property should inure to his sole heir at law, his daughter, and that she would then be the sole legatee and devisee to that portion of the estate bequeathed and devised in Paragraph Three of Mr. Bogner's Last Will and Testament.

For the reasons stated in the opinion, the judgment of the district court is affirmed.

STRUTZ, C. J., and ERICKSTAD, TEIGEN and KNUDSON, JJ., concur.