**VIRGINIA NATIONAL BANK, Executor and Trustee u/w of Lee B. Zittrain, Deceased, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 14418.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 10, 1970.

Decided June 14, 1971.

Richard W. Perkins, Atty., Dept. of Justice (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson and Loring W. Post, Attys., Dept. of Justice, and Brian P. Gettings, U. S. Atty., on brief), for appellant.

Richard B. Spindle, III, Norfolk, Va. (Allan G. Donn, and Willcox, Savage, Lawrence, Dickson & Spindle, Norfolk, Va., on brief), for appellee.

Before BOREMAN and CRAVEN, Circuit Judges, and MARTIN, District Judge.

BOREMAN, Circuit Judge:

Lee B. Zittrain (hereafter decedent) executed her will in Virginia on September 30, 1963. Following her death on December 26, 1963, Virginia National Bank (hereafter plaintiff) qualified as Executor and Trustee under the will. The will established Trusts A and B. Plaintiff filed with the Internal Revenue Service the appropriate estate tax returns claiming the full marital deduction for Trust A. The Commissioner disallowed the deduction and made an assessment of $8,067.41 in taxes and $1,288.91 in interest, for a total of $9,356.32. Plaintiff paid the assessment and applied for a refund. The refund was refused and plaintiff brought this suit to recover the amount paid. The district court entered judgment for plaintiff for the total amount claimed as a refund plus interest. The Government appeals and we affirm the judgment below.

The sole issue on this appeal is whether property willed to decedent's surviving husband in Trust A qualified for the marital deduction under § 2056(b)(5) of the Internal Revenue Code of 1954. Resolution of this question depends upon an interpretation of decedent's will. The parties agree that if the surviving

husband was given an unfettered right to invade the corpus of Trust A, the trust qualifies for the marital deduction; if he was not given such right to reach the corpus, then Trust A does not qualify for the marital deduction.

Clause Third of the will established Trust A for the benefit of the surviving husband and Trust B for the benefit of the surviving husband and children. The parties are agreed that Trust B does not qualify for the marital deduction. Trust A directed the trustee "To pay to my said husband * * * so much or all of the principal thereof as he, by his sole act, may, from time to time and by request to my Trustee, require." Taken by itself, this clause would qualify Trust A for the marital deduction since it gives the surviving husband the unlimited right to invade the corpus of the trust.

However, clause Sixth of the will contained severely limiting language, apparently conflicting with the provisions of Trust A. Clause Sixth consisted of two paragraphs, the first being a "spendthrift" provision and the second being a "forfeiture" provision. This clause reads as follows:

"*Notwithstanding anything herein to the contrary,* no interest of any beneficiary in income or principal of the *trusts* created by this will shall be subject to pledge, encumbrance, assignment, sale, transfer, or alienation in any manner by any such beneficiary, nor shall any beneficiary have power in any manner to anticipate, charge or encumber such interest nor shall such interest of any beneficiary be in any manner liable for or subject to the debts, contracts, liabilities, engagements or torts of such beneficiary.

"If at any time a beneficiary hereof shall attempt to pledge, encumber, assign, sell, transfer or alienate all or any part of his interest in the income or principal of the trust created by this will, or if a petition in bankruptcy shall be filed by or against any such beneficiary, or if any creditor, tort claimant, dependent or other person or persons, natural or corporate, or any Government, shall attempt by proceedings in any court or by any statutory process to subject all or any part of the interest of a beneficiary hereunder in the income or principal of the trusts created by this will, to the payment of any claim or demand whatsoever, including without limitation upon the generality of the foregoing, a claim for alimony, then *the entire interest of such beneficiary in such trust shall immediately cease and determine.* Thereafter, during the life of such beneficiary or until the prior termination of the trust, the Trustee may pay to or expend for the care and support of such beneficiary such amounts only as the Trustee may from time to time in its discretion deem proper, from either the income or principal of the Trust Estate to which the beneficiary would be entitled but for this provision, and any surplus income not so used may in the discretion of the Trustee be expended for the support and maintenance of the spouse, lineal descendants and dependents of such beneficiary or any one or more of such persons or in the discretion of the Trustee, any such surplus income may be retained by the Trustee and added to the principal from which such income was derived." (Emphasis supplied.)

The parties agree that the first paragraph alone, the "spendthrift" provision, would not disqualify Trust A for the marital deduction, but the Government contends that the second paragraph, containing the "forfeiture" provision, applies to Trust A and limits the trust to the extent that it cannot qualify for the marital deduction. It is agreed by the parties that if the "forfeiture" provision of clause Sixth does apply to Trust A, it cannot qualify for the marital deduction.

The district court held that clause Sixth was not intended to apply to Trust A because to so apply it would defeat

the intention of the decedent, as expressed in clause Third, to give her surviving husband an unfettered right to invade the corpus of Trust A. The court found that clause Third gave the surviving husband an interest equivalent to a fee simple estate in Trust A, and that to allow clause Sixth to invalidate or restrict this interest would be contrary to Virginia law under which any restriction in a will upon the right of the owner to alienate the fee or the right to control the disposition of any portion of the estate is void as being repugnant to the estate of the tenant in fee. The district court further held that clause Sixth should not be deemed to apply to Trust A because the language creating the surviving husband's fee in Trust A was clear and unambiguous and should prevail over the more general language employed in clause Sixth under the Virginia rule of construction that a specific provision in a will should prevail over a general provision where two such provisions are inconsistent. Thus, within the "four corners of the will," the district court concluded that clause Sixth was not intended to apply to Trust A.

At trial plaintiff offered parol evidence to support its interpretation of the will that Trust A qualifies for the marital deduction. The district court permitted the proffer of testimony but reserved its ruling upon admissibility. The court eventually concluded that since the clear intent of the decedent was apparent and was ascertainable from the "four corners of the will," the parol evidence as proffered was inadmissible.

The parol evidence which was proffered for the record included the testimony of the plaintiff's trust officer and the attorney who prepared the will. From this testimony it appears that the trust officer consulted with and advised the decedent, in the presence of her husband, prior to the preparation of the will. After the will was prepared, both the trust officer and the attorney conferred with decedent with respect to the will as presented to her for execution. The trust officer testified that the decedent was most concerned with reducing and minimizing estate taxes; that she wanted to give her surviving husband as much control as possible of property transferred to him by her will and still effect a reduction of estate taxes; that the trust officer had recommended the two-trust arrangement; that he examined the will after it was drawn and told the decedent that the will would give the surviving husband maximum and unlimited control of property transferred to him (in Trust A) and effect a reduction of liability for estate taxes; that he advised the decedent that Trust A as drawn would qualify for the marital deduction; that he told her that her surviving husband would have the unfettered right to use the principal of Trust A; and that he did not discuss clause Sixth with her at any time.

The attorney who prepared the will testified that the decedent was very much concerned with curtailment of liability for estate taxes; that she wanted her surviving husband to be able to invade the principal of a portion of her estate at any time; that he led the decedent to believe that her surviving husband's right to withdraw principal from Trust A would be unfettered and unlimited by any other provision in the will; that he had advised the decedent that Trust A in the completed will would qualify for the marital deduction; that clause Sixth was "boiler plate" which he usually used in preparing wills containing trust provisions; and that the language of clause Sixth was not analyzed, or explained to the decedent except to say, "This is a spendthrift clause. We usually use it. It's been approved by the bank and I have used it in many wills."

■ We find ourselves unable to agree with the district court that the will may be clearly interpreted within its four corners. While clause Third taken alone would appear to give the surviving husband an unfettered right to invade the corpus of Trust A, clause

Sixth would appear to be repugnant thereto and to create an ambiguity. Clause Sixth begins with the prefatory phrase, "Notwithstanding anything herein to the contrary," which would support a construction that clause Sixth would control over any other provision in the will. Thus, there are two clauses in decedent's will which are wholly inconsistent, thereby rendering the will ambiguous and the testator's true intent unascertainable from the will alone.

 Where the provisions of a will are ambiguous Virginia law sanctions the admission of parol evidence of attendant *facts and circumstances* at the time the will was written to show the meaning of the language used by the testator. Pitman v. Rutledge, 198 Va. 567, 95 S.E.2d 153 (1956). However, it is not proper to admit direct parol "evidence of the testator's actual intention, such as his declarations of intention, his informal memoranda for his will, his instructions for its preparation, and his statements to the scrivener or others as to the meaning of its language." Coffman's Adm'r v. Coffman, 131 Va. 456, 109 S.E. 454, 457 (1921). Thus, we must sift through the parol evidence proffered at trial to determine what portion, if any, was admissible for purposes of clearing up the facial ambiguity in the will. Since *Coffman* held that direct evidence of a testator's actual intention as stated in his declarations of intention or instructions for his will's preparation is inadmissible, the district court was correct in refusing to accept *evidence of what the decedent actually said to the trust officer or to the attorney* who assisted her in the preparation of her will. However, the court should have received and considered, as evidence of attendant facts and circumstances, the *testimony as to what the trust officer and the attorney advised and told the decedent,* since such testimony does not involve her own direct expressions of intention.

Both the trust officer and the attorney testified that they had advised the decedent to create Trust A so that her surviving husband would have an unfettered right to reach the corpus, thereby qualifying Trust A for the marital deduction and consequently effecting a reduction of estate taxes. Both the trust officer and the attorney testified that they had advised the decedent that the completed will established Trust A in such manner that her surviving husband would have an unrestricted right to invade the corpus of Trust A, and that Trust A would qualify for the marital deduction. Both the trust officer and the attorney testified that they did not specifically discuss clause Sixth with the decedent although the attorney told her that clause Sixth was a "spendthrift" clause, that it had been approved by the bank, that he had usually included such a provision in wills which he had drawn. The trust officer testified that he had told the decedent that the completed will would give her surviving husband the unrestricted right to the property transferred to him by her will and would minimize estate taxes by qualifying Trust A for the marital deduction.

██ We hold that such parol evidence was admissible since it does not violate *Coffman*'s admonition and teaching that parol evidence of a testator's own *direct* expression of intent is inadmissible to show what was meant by language used in a will. This admissible proffered testimony clearly shows that the decedent was repeatedly and consistently advised and assured that Trust A would qualify for the marital deduction. From our experience in the practice of the law and as judges we recognize that utmost care and consideration must be given to the choice of language employed in the preparation of legal documents. The ordinary layman cannot be expected to grasp the meaning of technical words and phrases employed in the creation of even a simple trust estate with a "spendthrift" clause designed primarily for the protection of the trust beneficiary or the creation of a trust designed to provide tax benefits flowing from the statutory marital deduction. He or she must, of

necessity, rely upon the advice and assurances of those trained in such matters. It appears from the proffered testimony that decedent was advised by the trust officer and the attorney, persons upon whose advice she relied, that Trust A would qualify for the marital deduction. No explanation was made of the possible effect on Trust A of subsequent language supplied by the attorney as "boiler plate." From these circumstances the intent of the decedent is clear that Trust A should qualify for the marital deduction. That intent should be given effect.

Thus, while we disagree with the reasoning of the district court in reaching the result evidenced by its judgment, we agree that Trust A qualified for the marital deduction. A decision should not be rejected or overturned when the correct result is achieved, even though an incorrect reason is assigned as the basis of the decision. Riley Co. v. Commissioner, 311 U.S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36 (1940); Lusk v. Eastern Products Corporation, 427 F.2d 705, 708 (4 Cir. 1970).

Affirmed.