Frank J. HITZ, Appellant,

v.

ESTATE OF Magdalena HITZ, Estate of Ann Pecora, Estate of Ludwig Hitz, George Hitz, Margaret Settelmeyer, and Barbara Resen, Appellees.

Civ. No. 10102.

Supreme Court of North Dakota.

May 13, 1982.

Traynor, Rutten & Traynor, Devils Lake, for appellant; argued by Thomas E. Rutten, Devils Lake.

Haugland & Heustis, Devils Lake, for Estate of Magdalena Hitz and Margaret Settelmeyer; argued by John C. Haugland, Devils Lake.

Hjellum, Weiss, Nerison, Jukkala & Wright, Jamestown, for Estate of Ann Pecora.

ERICKSTAD, Chief Justice.

The County Court of Eddy County entered a judgment on September 17, 1980, denying a request by Frank J. Hitz for an order requiring the administrator of the John Hitz estate to execute a deed conveying to Frank the quarter section of farmland described by paragraph four of John's last will and testament. Frank appealed to the district court which entered a judgment, on August 14, 1981, affirming the judgment of the county court. Frank has now filed an appeal with this Court from the judgment of the district court. We reverse and remand.

On this appeal we are asked to interpret the following provision of John Hitz's will:

"FOURTH. I give and devise the Southeast Quarter (SE¼) of Section Ten (10), in Township One Hundred Forty-nine (149), Range Sixty-eight (68), Wells County, North Dakota, to my son, Frank J. Hitz, provided that he shall pay to my daughter, Ann Pecora of New York, the sum of Four Thousand Dollars ($4000.00), and provided further, that I hereby give and devise to my wife, Magdalena Hitz, a life estate in said land."

Prior to John's death in 1962, he and his son, Frank, farmed the 880 acres of farmland owned by John. John's will provided that Frank was to receive a remainder interest in fee to 560 acres of the farmland subject to a life estate interest in John's wife, Magdalena Hitz. John's will further provided under paragraph three that Frank was to receive a remainder interest in another 160 acres, subject to a life estate interest in Magdalena, "provided that he shall pay" to John's son, Ludwig, the sum of $5,000. Paragraph four of John's will, the disputed provision in this case, provided that Frank was to receive a remainder interest in an additional 160 acres, subject to a life estate in Magdalena, "provided that he shall pay" to John's daughter, Ann Pecora, the sum of $4,000.

Ann died during January, 1966, and it is undisputed that Frank made no attempt to pay Ann the $4,000 prior to that time. During 1975, Frank paid Ludwig $5,000 in satisfaction of the third paragraph of John's will. Frank testified that shortly thereafter he attempted to contact Ann's heirs in New York to pay the $4,000 in satisfaction of paragraph four of John's will. During 1977 and 1978, there is a series of letter correspondence between Frank's attorney and an attorney in New York City whereby Frank made an attempt to obtain documentation that Mike Pecora, Ann's surviving spouse, was the person en-

titled to receive the $4,000 payment. Magdalena died on February 11, 1980, at which time the life estate interest in the farmland which she received under John's will terminated. The parties in this case stipulated at the July 14, 1981, hearing that on February 21, 1980, within two weeks after Magdalena's death, Frank sent a check in the amount of $4,000 to Mike Pecora which he intended as payment under paragraph four of John's will and that the check was returned to Frank by Mike Pecora.

On appeal the attorneys for Magdalena's estate and for the personal representative of the estate, Margaret Hitz Settelmeyer, assert that the requirement for payment of $4,000 to Ann under paragraph four of John's will constituted a condition precedent to Frank's receipt of an interest in the farmland under that provision. They further assert that Frank failed to fulfill the condition precedent by his failure to pay the $4,000 to Ann prior to her death in 1966 and that, as a consequence, Frank's interest in the estate did not vest in him but instead merged with Magdalena's life estate interest resulting in her owning a fee interest in the farmland which passed by the residuary clause of her will to Margaret Hitz Settelmeyer. Frank asserts that paragraph four of John's will did not impose a condition precedent to the vesting of his interest in the farmland specified in that paragraph but that, upon John's death, Frank received a vested remainder interest in that farmland which was subject to an equitable charge or lien securing payment of Ann's $4,000 legacy. Frank further asserts that the $4,000 charge or lien was not enforceable against his interest in the farmland until Magdalena's death when her life estate interest terminated and Frank thereby came into possession of the farmland.

■ The court's purpose in construing a will is to ascertain the intention of the testator as it appears from a full and complete consideration of the will when read in light of the surrounding circumstances. *In re Estate of Bogner*, 184 N.W.2d 718 (N.D. 1971).

■ In this case R. G. Manly, the attorney who drafted John Hitz's will, was permitted to testify as to his opinion of the proper interpretation of paragraph four of John's will, a part of which is as follows:

"Q. Now, is it not true that when Ann Pecora died, and the fact that Frank Hitz had not paid or complied with the fourth paragraph here, did not the life estate merge with the remainder—

"MR. RUTTEN: I object. It is a matter of law and he is not qualified to answer that as a matter of fact.

"MR. HAUGLAND: He is a lawyer.

"A. I am not sure of the legal angle but I think that is the way it goes, Ann was out.

* * * * * · *

"Q. Was it not your opinion as an attorney, was it not your opinion for the failure of Frank Hitz to pay Ann Pecora personally the $4,000 that this paragraph 4 lapsed?

"MR. RUTTEN: Same objection.

"A. Yes, that was my opinion. I thought that was my opinion. That is my opinion. That is what I want the Court to decide, if I am right or wrong."

A number of jurisdictions, in cases involving a dispute over an ambiguous will provision, have permitted the scrivener of the will to give testimony reflecting upon the probable intent of the testator including such matters as communications between the testator and the scrivener, instructions given by the testator to the scrivener prior to or during preparation of the will, and circumstances surrounding execution of the will. *See, In Re Estate of Sayewich*, 413 A.2d 581 (N.H.1980); *Festorazzi v. First National Bank of Mobile*, 288 Ala. 645, 264 So.2d 496 (1972); *Virginia National Bank v. United States*, 443 F.2d 1030 (4th Cir. 1971); *In Re Estate of Mangel*, 51 Wis.2d 55, 186 N.W.2d 276 (1971); *Wilson v. Flowers*, 58 N.J. 250, 277 A.2d 199 (1971). However, we are unaware of any case authority permitting the scrivener of a will to testify for the purpose of giving his own opinion as to the proper legal interpretation of a provision in the will. Upon reviewing the transcript of

Manly's testimony in this case we conclude that there was no testimony elicited from him which had any probative value regarding the testator's intent under the disputed provision of the will. Consequently, Manly's testimony in this regard is irrelevant for purposes of construing the will.

In the case of *In Re Gray's Estate,* 27 N.D. 417, 146 N.W. 722 (1914), this Court stated that a will provision which directs a devisee to pay a sum of money will be construed, if possible, as merely a charge upon the devised estate securing the payment and not as a condition the breach of which would cause a forfeiture of the estate. This rule of construction, which favors vested estates over contingent estates, is the prevailing rule. *See, Rubio v. Valdez,* 603 S.W.2d 346 (Tex.Civ.App.1980); *Miller v. Miller,* 197 Neb. 171, 247 N.W.2d 445 (1976); *Moehrs v. Moehrs,* 22 Ill.App.3d 223, 317 N.E.2d 412 (1974); *Martens v. Sachs,* 138 Neb. 678, 294 N.W. 426 (1940); *Schrader v. Schrader,* 158 Iowa 85, 139 N.W. 160 (1912); *Spangler v. Newman,* 239 Ill. 616, 88 N.E. 202 (1909); *See also,* Annot., 62 A.L.R. 589 (1929).

We believe that John's will, when considered as a whole, indicates John's intent that his farmland, upon Magdalena's death, should go to his son Frank, who had chosen to remain on the farm and pursue farming as his avocation. John's will further indicates his intent that his son, Ludwig, and his daughter, Ann, should receive legacies of $5,000 and $4,000, respectively. The devise of farmland to Frank under paragraph's three and four of John's will "provided that" Frank pay such legacies to Ludwig and Ann can be construed, consistent with John's intent that Frank receive all of the farmland while Ludwig and Ann receive monetary legacies, by interpreting the will as placing an equitable lien upon that farmland for payment of the legacies. The will contains no express language indicating that John intended Frank's interest in the farmland to be subject to forfeiture. John's intent to give Ann a $4,000 legacy can be given effect by construing the will as creating an equitable lien upon Frank's interest in the farmland under paragraph four to secure payment of that legacy. Accordingly, we hold that paragraph four of John's will devised to Frank a vested remainder interest in the farmland specified under that paragraph subject to an equitable lien securing payment of the $4,000 legacy to Ann.

The attorneys for Magdalena's estate and its personal representative, Margaret Hitz Settelmeyer, assert that the $4,000 legacy was required to have been paid within a reasonable time after John's death. Frank asserts, to the contrary, that the equitable lien upon his interest in the farmland was not enforceable until Magdalena's death at which time her life estate terminated and Frank's interest in the property became possessory.

We believe the interpretations of the Supreme Court of Virginia in *Armentrout v. Armentrout's Executors,* 112 Va. 660, 72 S.E. 721 (1911), and of the Iowa Supreme Court in *Schrader v. Schrader,* 158 Iowa 85, 139 N.W. 160 (1912), construing equitable charges or liens against remainder interests as being enforceable only upon termination of the preceding life estate interests are applicable in this case.

*Armentrout, supra,* involved a will provision in which the testator gave a life estate in his property to his wife with remainder interests to two sons and a daughter upon which the remainder interests were charged with payment of legacies to other persons. With regard to the time those charges became enforceable against the remainder interests, the Virginia Supreme Court stated:

"Under the will the appellees do not come into possession of any part of the estate devised and bequeathed to them until the expiration of the precedent life estate, and then their interest is subject to the payment by them of $400 to each of the three appellants.

\* \* \* \* \* \*

"We are of opinion that the reasonable interpretation of the testator's will is that the three several sums of $400 each given to the appellants constitute charges alone

upon the interests of those to whom the estate in remainder is to pass; that these charges do not become payable until the expiration of the life estate and, therefore, do not bear interest except from that date, for the reason that otherwise the interests of the remaindermen might be sacrificed. It is reasonable to suppose that the testator intended that those upon whom he imposed the burden of the charges should have possession of the property charged as a means of discharging them." 72 S.E. at 722.

In *Schrader, supra,* involving a similar situation, the Iowa Supreme Court concluded:

"Finally, it should be noted that the will fixes no time in which the $500 is to be paid. It cannot be presumed that the testator contemplated payment thereof before the expiration of the mother's life estate.

\* \* \* \* \* \*

"The testator's purpose, as indicated by the will, was to give his wife a life estate, subject to which he undertook to divide one piece of land between his three sons and to give the other tract to George, charged with a payment to be made to Henry. This will be effectively accomplished by permitting the defendants, as the widow and heir of George, to take the land, subject to the burden which the will imposes upon it." 139 N.W. at 163.

In this case John's will contained no language which indicates that he intended Magdalena's life estate interest in the farmland under paragraph four to be subject to the payment of Ann's $4,000 legacy. Nor is there any language in John's will which indicates an intent by him that the equitable lien against Frank's interest in the farmland under paragraph four should be enforceable prior to Frank obtaining a possessory interest in the land at which time, as a practical matter, Frank could more readily secure funds through his interest in the farmland with which to pay the legacy. Accordingly, we construe the equitable lien created against Frank's interest in the farmland under paragraph four as becoming enforceable only upon Magdalena's

death at which time her life estate interest in that farmland terminated and Frank's interest became possessory.

Upon Ann's death in 1966, her vested interest in the $4,000 legacy passed through her will to her beneficiaries or, in the event she died intestate, to her heirs at law. Such person or persons became entitled to payment of the $4,000 legacy upon Magdalena's death and, in the absence of such payment, to enforcement of the equitable lien against Frank's interest in the farmland.

We reverse and remand to the district court for entry of judgment in accordance with this opinion.

VANDE WALLE, PEDERSON and SAND, JJ., concur.

GRAFF, D. J., sitting in place of PAULSON, J., disqualified.

GRAFF, District Judge (concurring in part, dissenting in part).

I concur with that portion of the majority opinion which holds that paragraph four of the will gave to Frank Hitz a vested remainder in the real property subject to a lien in favor of Ann Pecora in the sum of four thousand dollars. By this construction, this Court not only follows the majority rule in the United States, but further carries out the intention of the testator in distributing his property. However, in my opinion, the Court errs in delaying the enforceability of that lien until the life estate is terminated.

The majority, in delaying the enforceability of the lien, equates the right of actual possession by the remainderman with its value. This finding ignores the fact that a vested remainderman is the immediate owner of a transferrable interest. He has the right of enjoyment of that property from and after the date of death. This includes not only his right to sell, but to prevent waste by the life tenant since the life tenant may not take any steps to diminish the estate of the remainderman. In North Dakota, these interests could include the remainderman's rights as they relate to

oil and gas, gravel, coal or timber. In my opinion, these indeed are valuable rights and it is a fundamental inconsistency to vest those rights in the remainderman and delay all the rights of the lienholder.

The majority, in my opinion, has misplaced reliance on the *Armentrout* case. *Armentrout* not only relies upon possession as the key factor, but in addition does not construe the provision in that will as creating a vested remainder. The language 72 S.E. at page 722, which follows the initial quote in the majority opinion states:

"Clearly the appellees have the right to elect whether they will or will not accept the provision for them, coupled with the requirement that they discharge the payments imposed upon them by the will. There is no allegation in the bill that the remaindermen have elected to accept the devise and bequest in their favor, and until the expiration of the life estate they cannot be required to make such election, because until that time arrives they cannot determine the value of the devises and bequests to them."

We have not made such a determination in this case. Our ruling is that the estate has in fact vested at the death of the testator, and the only way in which it will be lost is for the equitable lienholder to foreclose her lien.

The *Schrader* case, as in *Armentrout*, relies heavily upon actual possession by the beneficiaries as keying the time for payment. The statements I have previously made regarding the enjoyment of the property without actual possession would apply to my disregard of that precedent.

In construing the devise in question, I believe the testator had two objects. He wanted the land in question to go to his son, Frank Hitz, and he also wanted his daughter, Ann Pecora, to receive four thousand dollars. In order for these objects to be carried out, the lien must be due and payable immediately. I believe logic as well as the facts in this case support that conclusion. The logic I refer to is the fact that four thousand dollars due and payable in 1962, that being the date of death, is worth far more than the sum of four thousand dollars in 1983. I believe the testator knew what that value was at or about the time of his death, but in no way could estimate what the value would be upon his wife's death.

In addition to that factor, I would consider the testimony of the scrivener of the will in arriving at this conclusion. Although it is evident that he is not aware of what property interest he created by the provision in the will, it is clear that he felt that the payments to be made by Frank Hitz were due and payable upon the death of the testator. His testimony reveals that from and after the date of death, he continually requested that Frank Hitz make the payment. Although I believe his testimony is good for little else, I believe it has merit in that regard.

Based on the foregoing, I would allow the lien to be enforceable from and after the date of the testator's death. At that time it became a legacy for Ann Pecora and to which she was entitled. Under the law in existence at that time, legacies were due and deliverable at the expiration of one year from the testator's decease. Section 56–06–12 further provided that legacies would bear interest from the time they become due and payable.

I would change the results in this case by allowing interest on the four thousand dollars at the legal rate from and after March 19, 1963, the one year anniversary of John Hitz's death. Not only do I believe this is required by the law, but this more effectively carries out the intention of the testator.